PEOPLE ex rel. INTERBOROUGH RAPID TRANSIT CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Appellate Division, Third Department. May 6, 1908.)

1. TAXATION—EXEMPTIONS—SPECIAL FRANCHISE TAXES—"REAL ESTATE."

The original Rapid Transit Law, Laws 1891, p. 3, c. 4, contemplated that a city having over 1,000,000 inhabitants, by its rapid transit commissioners, should establish routes, obtain the necessary consents, make plans and specifications for a subway, and sell to the highest bidder for the benefit of the city the privilege and franchise to construct and operate it. Laws 1894, p. 1896, c. 752, § 35, in amendment thereof, permitted a vote of the people to determine that the subway should be constructed for and at the city's expense, and provided that, if so constructed, it should remain the absolute property of the city, and be deemed a part of the public streets. Laws 1902, pp. 1610–1614, c. 584, permitted the contractor to assign his contract, with the commissioners' consent, for the construction and operation of the subway separately, and pursuant thereto the

provision of the contract for operation of the subway was assigned. Tax Law, Laws 1896, p. 796, c. 908, § 2, subd. 3, as amended by Laws 1899, p. 1589, c. 712, provides that the term "real estate" shall include tangible property of a railroad and also the value of all franchises to construct and operate the same over, on, or under public streets. Subdivision 3 also exempts municipal corporations from special franchise taxes, and subdivision 4 exempts property of a municipal corporation held for public use. Laws 1894, p. 1884, c. 752, § 35, in amendment of the original Rapid Transit Law, Laws 1891, p. 3, c. 4, § 35, substantially re-enacted in Laws 1900, p. 1360, c. 616, § 4, exempts the operator of such subway from taxation in respect to his interest therein under the contract with the city for its operation, and in respect to the rolling stock and other equipment of the subway. *Held,* that the special franchise to operate the subway acquired under assignment of the contract with the city is exempt from a special franchise tax by the exemption of the tax law of a municipality from a special franchise tax; since, if the city had been given the power to operate the road, no special franchise tax could be imposed on it, and, as the city can only operate it through another, the operator for the city is also exempt, which exemption from a special franchise tax is not only confirmed by the rapid transit law, but that law also makes exempt the rolling stock and equipment.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 5937; vol. 8, pp. 7778, 7779.]

2. SAME.

Under Tax Law, Laws 1896, p. 801, c. 908, § 9, providing that where real estate is owned by a resident of a tax district in which it is situated, it shall be assessed to him, and that, where owned by a resident outside the district, it shall be assessed to the occupant, a subway constructed under the original Rapid Transit Law, Laws 1891, p. 3, c. 4, and the acts in amendment thereof and supplemental thereto, or the franchise to operate it, if taxable, is taxable to the city and not to the operator, and as the city is exempt from a special franchise tax, the operator is also exempt.

3. SAME.

Tax Law, Laws 1896, p. 796, c. 908, § 2, subd. 3, as amended by Laws 1899, p. 1589, c. 712, making a special franchise of a railroad to construct or operate its line above, on, or under public streets real estate for the purpose of taxation, does not deprive the operator of a subway from the exemption from taxation declared by the rapid transit law first contained in the amendment by Laws 1894, p. 1884, c. 752, § 35, and substantially re-enacted by Laws 1900, p. 1360, c. 616, § 35, providing that the operator of a subway shall be exempt from taxation in respect to his interest therein under the contract with the city for its operation and in respect to the rolling stock and other equipment.

4. SAME.

Laws 1896, p. 715, c. 729, in amendment of Rapid Transit Law, Laws 1891, p. 3, c. 4, § 35, exempting the operator of a subway from taxation in respect to his interest therein under the contract with the city for its operation and in respect to the rolling stock and other equipment, was enacted May 19th. Tax Law, Laws 1896, p. 795, c. 908, was enacted May 29th at the same session of the Legislature. Section 35 was again substantially re-enacted by Laws 1900, p. 1360, c. 616, § 35. The exemption provided for by section 35 was omitted from the amendment of the rapid transit law by Laws 1905, p. 1483, c. 599, § 2, but that chapter provided that nothing in it should repeal, modify, or alter any provision of the act amended with respect to any road constructed or contracted for. Statutory Construction Law, Laws 1892, p. 1492, c. 677, § 33, provides that, where two acts are passed at the same session, the presumption is that the Legislature did not intend to repeal by implication the earlier act. *Held,* that the entire legislation seemed to be consistent only with the theory that the operator of a subway is not liable for a tax because of rights held under the contract with the city for its operation, which exemption is not repealed by Tax Law, Laws 1896, p. 795, c. 908.

Appeal from Special Term, Albany County.

Certiorari by the people, on the relation of the Interborough Rapid Transit Company, to review a determination of the State Board of Tax Commisioners assessing a special franchise tax against the relator, and to cancel such tax. From a judgment of the Special Term reversing the determination of the state board, and canceling the tax, the state board appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ..

William S. Jackson, Atty. Gen. (George P. Decker, deputy, of counsel), for appellant.

Strong & Cadwalader (George W. Wickersham, Edward E. Sprague, and Stephen P. Nash, of counsel), for respondent.

JOHN M. KELLOGG, J. The original rapid transit law (chapter 4, p. 3, Laws 1891) contemplated that the city, by its rapid transit commissioners, should establish routes, obtain the necessary consents of the local authorities and the property owners, make plans and specifications for a subway, and sell to the highest bidder, for the benefit of the city, the privilege and franchise to construct, maintain, and operate it. The amendment by section 63, c. 752, p. 1896, Laws 1894, permitted a vote of the people to determine that the subway should be constructed for and at the expense of the city, and provided that, if so constructed, "it shall be and remain the absolute property of the city, * * * and shall be and be deemed to be a part of the public streets and highways of the city to be used and enjoyed by the public upon the payment of such fares and tolls and subject to such reasonable rules and regulations as may be imposed and provided for by the board of rapid transit commissioners of said city." The vote of the people determined that the subway in New York should be constructed for and at the expense of the city, and a contract was let to one McDonald for the construction, maintenance, and operation of the road. He, as the statute provided, was to pay a certain rental for the use of said road and furnish the rolling stock and equipment. Chapter 584, p. 1610–1614, Laws 1902, permitted the contractor to assign his contract with the consent of the commission for the construction and the operating "or leasing provision of said contract" separately, and, pursuant thereto, the provision of the contract for leasing or operating the road was assigned to the relator. The right of the relator to exist as a railroad company; and to maintain and operate a railroad, is its general franchise, with which we are not concerned here. A special franchise of a railroad is its right to construct, maintain, and operate a railroad in public streets, highways, or public places. People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 435, 436, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674. By the rapid transit law, and the acts amendatory and supplemental thereto, the special franchise as well as the road itself is the property of the city, and was merged in and became a part of the public highway for the public use. Had this underground highway been constructed for the use of automobiles, or a particular class of vehicles owned by individuals, it would not be considered that the operator of such vehicles thereon was exercising a

public franchise in the highway, although he paid a toll each time he used it; and, if a vehicle of the class intended charged a fare to those riding therein, the situation would not be changed. The city itself was not given the power of a railroad corporation, and was therefore incapable, except through the contract which the statute authorized of making this public work available for public use. For the purposes of this case, it is unnecessary to determine whether the relator is technically a lessee, an operator, or a separate contractor who performs a public service which the city could perform only through the agency of another, and the performance of which it was its duty to provide. However the matter is viewed, we find a public highway operated in a manner required by the statute and the commission in charge of it, the operator paying a fixed sum to the city for the use of the property, and the balance of the fares are held by it for performing the public service. The statute defines the relator as an "operator" or a "lessee," speaks of the "rental for the use of the road," and provides that the contract may permit "the renewal or renewals of the lease of said road." The only question for decision here is whether the relator is subject to a special franchise tax on account of the rights which it exercises under said contract.

A special franchise with reference to a railroad is the right to construct, maintain, and operate it over, upon, or under public streets, highways, or public places, including the tangible property of the railroad in use over, upon, or under the highway. Subdivision 3, § 2, Tax Law; chapter 908, p. 796, Laws 1896, as amended by chapter 712, p. 1589, Laws 1899. Where the railway is located entirely in or under the streets, highways, or public places, the special franchise consists of the physical property itself, including the right to use it. Said subdivision 3 provides:

"No property of a municipal corporation shall be subject to a special franchise tax."

Subdivision 4 of the tax law, in declaring what property is exempt from taxation, provides:

"(3) Property of a municipal corporation of the state held for a public use, except the portion of such property not within the corporation."

If the city had been given power to operate this road, it is clear that no franchise tax could be charged against it. As the city can only operate it through another, it would seem to follow that the operator for the city is also exempt from taxation. The general scheme of the statute under which this subway was built was: The city bonded itself to pay for the construction of the road, which bonds, with interest thereon, are to be paid by the operation of the road, so that at the end of the lease or contract for operation the city will own the road free of cost. It was therefore necessary, in order to make the scheme available, to find a contractor who would agree to construct, maintain, and operate the road upon terms which the statute permitted the city to make. A statute declaring the property of a municipality free from taxation, which property it can only use through the services of a special contractor or lessee, confers no benefit upon the city if the contractor or lessee is to be taxed for using the property, as the amount

of the tax would necessarily affect the rental which the city may receive. The statutory exemption, therefore, is meaningless, unless it exempts the property from taxation when applied to the only use and in the only manner in which the city could use it.

A special franchise, as we have seen, is only taxable as real estate, and section 9 of the tax law provides, among other things:

"When real property is owned by a resident of a tax district in which it is situated, it shall be assessed to him."

It can only be assessed to a tenant or occupant when the owner does not reside within the tax district. If taxable, therefore, this subway, or the franchise relating to it, is taxable to the owner, and not to the tenant or operator, and it would seem necessarily to follow that, if the owner is exempt from taxation, the tenant or occupant must also be exempt.

The Legislature, however, has not left the question open as one of construction or inference, but has, by express provision, extended the exemption to the operator or lessee of the city. This latter exemption was first contained in the amendment of 1894, which permitted the city to construct and own the subway and contract for its operation, and that statute in its present form is found at section 35, p. 1360, c. 616, Laws 1900, and provides:

"The person, firm, or corporation operating such road shall be exempt from taxation in respect to his, their or its interest therein under said contract, and in respect to the rolling stock and other equipment of said road; but this exemption shall not extend to any real property which shall be owned and employed by the said person, firm or corporation in connection with the construction or operation of the road."

This exemption was undoubtedly intended to make the proposed contract for operation, or the lease, attractive, and to aid the city in securing a proper contract for the operation of the road at a profit to it. So far as the road and the franchise of the road itself are concerned, I think they were exempt by the provision of the statute exempting the municipality from a special franchise tax. This statute not only confirms that exemption, but also makes exempt the rolling stock and equipment. In operating the subway the relator (1) exercises its general franchise, which cannot be considered here for taxation, (2) uses certain real estate actually owned by it, which is taxable as real estate and cannot be considered here, (3) exercises rights which it acquires under contract with the city and for which it pays the city a rental, which rights, as we have seen, are specially exempt from taxation by the provision of the tax law, and the rapid transit law, (4) uses equipment and rolling stock belonging to it, which are exempt from taxation under the rapid transit law, but which, if taxable, are taxable as personal property, and cannot be considered here. It therefore is not subject to any special franchise tax.

The contention that the subsequent statute declaring a special franchise real estate for the purpose of taxation deprives the relator of the exemption provided for it under the rapid transit law is not well taken. The exemption relates to all interests the relator acquired under the contract, whether such interests relate to real estate or personal property. The taxation provided for is upon the real estate actually own-

ed by the operator. The statute draws the proper distinction between the real estate owned by the operator and the property, real or personal, not owned by him, but operated under the contract with the city. It may well be questioned whether the Legislature, if disposed so to do, could destroy the promised exemption after the contract was made relying upon it. The courts by a doubtful construction will not impute to it an intent to violate the promise by which the city was aided in obtaining a contractor.

It is urged that the tax law (chapter 24, Gen. Laws; c. 908, pp. 795–888, Laws 1896) repeals by implication section 35 of the rapid transit law, which contains the exemption from taxation. Section 35 of the rapid transit law (Laws 1891, p. 3, c. 4) was amended May 19th, by chapter 729, p. 715, Laws 1896, and the tax law was enacted May 29th at the same session of the Legislature. Where two acts are passed at the same session, it is presumed that the Legislature did not intend to repeal by implication the earlier act, and such is the provision of the statutory construction law (section 33, c. 677, p. 1492, Laws 1892). We have seen that section 35 of the rapid transit law was again substantially re-enacted in the year 1900. Laws 1900, p. 1360, c. 616, § 4. The exemption provided by section 35 of the rapid transit law was omitted from the amendment of that law made by section 2, c. 599, p. 1483, Laws 1905; but that chapter provided that nothing in it should repeal, modify, or alter any provision of the act amended with respect to any road constructed or contracted for before the act takes effect, and, as to existing roads, the act amended was to continue and remain in full force. Here the Legislature does not permit its good faith to be questioned, but provides that the former law shall remain in full force so far as it has been acted upon. The entire legislation upon the subject seems to be consistent only with the theory that the operator is not liable for any tax on account of the rights it holds under the contract. It is not therefore liable for any special franchise tax.

The judgment appealed from should therefore be affirmed.