PEOPLE ex rel. INTERBOROUGH RAPID TRANSIT CO. v. WILLIAMS, State Comptroller.

(Supreme Court, Appellate Division, Third Department. May 4, 1910.)

1. TAXATION (§ 150*)—FRANCHISE TAX—CORPORATIONS INCLUDED—"SURFACE RAILROAD."

Under Tax Law (Laws 1896, c. 908) § 185, imposing a franchise tax on companies "operating any elevated railroad or surface railroad," an underground street railroad is not to be classed as a "surface road" within the meaning of the statute merely because for a short distance it may run on the surface of the ground.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 267–269; Dec. Dig. § 150.*]

2. TAXATION (§ 197*)—EXEMPTION—CONSTRUCTION OF STATUTES.

A statutory exemption from taxation should be given a fair construction, in order to carry out the real purpose for which the exemption was allowed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 315, 316; Dec. Dig. § 197.*]

3. TAXATION (§ 394*)—FRANCHISE TAX—GROSS EARNINGS—BASIS FOR ASSESSMENT.

The tax on elevated and surface street railroads imposed by Tax Law (Laws 1896, c. 908) § 185, providing that every corporation owning or operating any elevated or surface railroad not operated by steam shall pay to the state for the privilege of exercising its corporate franchise, or carrying on its business, an annual tax which shall be 1 per centum on its gross earnings from all sources, being a tax for the privilege of exercising a corporate franchise, and not one upon earnings or property, earnings on property exempt from direct taxation are not to be deducted in stating the tax, and hence a corporation operating an elevated and surface street railroad is not entitled to a deduction for an underground railroad operated by it in connection with its other roads.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 669; Dec. Dig. § 394.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TAXATION (§ 124½*)—TAX ON CORPORATE DIVIDENDS—OPERATION OF ROAD BY LESSEE—"EMPLOYED."

Under Tax Law (Laws 1896, c. 908) § 185, providing that every corporation owing or operating any elevated or surface railroad not operated by steam shall pay to the state for the privilege of exercising its corporate franchise, or carrying on its business, 3 per centum upon the amount of dividends declared or paid in excess of 4 per centum "upon the actual amount of paid-up capital employed by such corporation," and that any such railroad corporation whose property is leased to another railroad corporation shall only be required to pay a tax of 3 per centum upon the dividends declared and paid in excess of 4 per centum upon the amount of its capital stock, a lessee of elevated and surface street railroads is not liable for such tax, since it has no capital stock "employed" in the operation of the road.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 124½.*

For other definitions, see Words and Phrases, vol. 3, pp. 2377–2380; vol. 8, p. 7649.]

5. TAXATION (§ 204*)—EXEMPTION—NATURE OF RIGHT—"PROPERTY RIGHT."

Immunity from taxation is a "property right."

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 204.*

For other definitions, see Words and Phrases, vol. 6, p. 5729; vol. 8, p. 7770.]

6. TAXATION (§ 124½*)—FRANCHISE TAX—LIABILITY OF LESSEE CORPORATION.

A corporation operating elevated, surface, and underground street railroads, under a lease from another corporation owning the roads, is liable to the tax imposed by Tax Law (Laws 1896, c. 908) § 185, providing that every corporation owning or operating any elevated or surface railroad not operated by steam shall pay to the state for the privilege of exercising its corporate franchise or carrying on its business an annual tax, which shall be 1 per centum upon its gross earnings from all sources within the state.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 124½.*]

Smith, P. J., and Sewell, J., dissenting.

Certiorari by the People of the State of New York, on the relation of the Interborough Rapid Transit Company, against Clark Williams, as Comptroller of the State of New York, to review the determination of such Comptroller, stating a franchise tax under section 185 of the Tax Law against the relator for the years ending June 30, 1907, 1908, and 1909. Determination modified.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

James L. Quackenbush (Ralph Norton, of counsel), for relator.
Edward R. O'Malley, Atty. Gen. (Edward Letchworth, Deputy, of counsel), for respondent.

JOHN M. KELLOGG, J. The statute is question imposes this tax only on elevated railroads, or surface railroads not operated by steam. The mere fact that an underground railroad for a short distance may run upon the surface, and for another short distance upon an elevated structure, does not make it a surface or elevated railroad. Its distinctive character is an underground railroad. It is not therefore taxable under this statute. The relator is exempt from taxation in respect to anything it does pursuant to the contract with the city under

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the subway was constructed and is operated. People ex rel. Interborough Rapid Transit Co. v. Tax Com'rs, 126 App. Div. 610, 110 N. Y. Supp. 577, affirmed 195 N. Y. 618, 89 N. E. 1109.

The statutory exemption should be given a fair construction in order to carry out the real purpose for which it was allowed. The exemption from taxation was an inducement which led to the construction and operation of the subway, and should be fairly observed.

It follows, therefore, that, aside from the fact that the relator is operating the Manhattan Elevated Railroad as lessee, it would not be subject to this tax. The statute provides that the tax against the owning or operating company shall be 1 per centum upon its gross earnings from all sources within the state. The petition shows that the relator is operating the elevated railroads of the Manhattan Company, and the gross earnings of the relator are therefore made up of its earnings from its subway and from the Manhattan Elevated Roads.

This tax is not upon earnings or property, but is for the privilege of exercising a corporate franchise in carrying on the business. The fact that the relator, with reference to the subway, is exempt from taxation except as to the real estate owned by it, does not permit us, in ascertaining the gross earnings of the company from all sources, to eliminate the earnings of the subway. The earnings are used simply as a method of determining what the use of the franchise is worth; a measure merely to determine how much tax should be paid upon the franchise. Earnings from patents, United States bonds, or other property expressly exempt from taxation, are not to be excluded in determining the amount of the earnings of a corporation which is to be used in fixing the value of its franchise. People ex rel. U. S. P. P. Co. v. Knight, 174 N. Y. 475, 482, 67 N. E. 65, 63 L. R. A. 87.

The gross earnings of the relator from all sources within the state must be taken into account in computing this tax.

The tax upon the surplus dividend is upon the actual amount of paid-up capital "employed" by the corporation. This means employed by the corporation in the ownership or operation of the road. We assume from the record that the elevated roads are operated under their own charter, and the relator, as lessee, is only interested financially in the net earnings of that corporation after paying the interest upon its bonds and the rental to be paid. A tax is imposed by this section upon the excess dividends of such leased corporation. It is not probable that the Legislature intended by this provision that the lessor company must pay a tax upon its excess dividends for the privilege of operating its railroad, and that the lessee company must pay a tax upon its excess dividends for the privilege of operating the road as lessee, thus making a double taxation. The first part of the section expressly declares that the gross earnings from all sources shall be considered, showing that not only the earnings of the lessee should be computed, but all earnings of the operating company. The latter part of the section omits the general words, and by the use of the word "employed" makes it clear that the excess of dividend is to be considered, so far as the lessee is concerned, only upon the amount of its capital stock, if any, employed in the business. It does not appear that any of the capital stock of the relator is employed in the operation of the

elevated road.  On the contrary, we infer from the record that the relator receives from the operation of that road more than all it pays on account thereof, so that the lease is a profit to it.

The tax law of 1896 (Laws 1896, c. 908) first made a company operating an elevated or surface road not operated by steam subject to this tax, and eight years thereafter, in 1903, the relator voluntarily, and for its own profit, took the lease of the elevated railroads of the Manhattan Elevated Railway Company, and has since continuously operated them.  Immunity from taxation is given to the relator with reference to its subway and its operation thereof, and such immunity is a property right.  But when it voluntarily, for its own profit, took the lease of the other railroads and operated them, it made itself subject to any liability for taxation which any other lessee would have incurred by reason of such lease and operation.  By taking the lease and operating the leased roads, it voluntarily subjected itself to a tax with reference thereto, in computing which tax its earnings "from all sources" may be considered.  The terms of the lease do not appear; but the petition admits that the relator has continuously operated the elevated railroads as lessee, and this admission brings it within the terms of the taxing statute.

It follows from these views that the relator is liable to pay a tax of 1 per centum on its gross earnings from all sources within the state, including the earnings of the subway as well as its earnings from other sources, and that the excess dividends declared by the relator upon its own stock cannot, upon the facts shown, be taken into consideration in stating the tax.

The determination is therefore modified by striking therefrom the excess dividend tax on the Interborough stock, and, as so modified, confirmed, without costs.

COCHRANE and HOUGHTON, JJ., concur.

SMITH, P. J. (dissenting).  This relator's road was constructed under chapter 752 of the Laws of 1894, as amended by chapter 729 of the Laws of 1896, and by chapter 616 of the Laws of 1900.  Section 35 of the act as finally amended reads:

"Sec. 35. The equipment to be supplied by the person, firm or corporation operating any such road, shall include all rolling stock, motors, boilers, engines, wires, ways, conduits and mechanisms, machinery, tools, implements and devices of every nature whatsoever used in the generation or transmission of motive power and including all power houses and all apparatus and all devices for signaling and ventilation.  Such person, firm or corporation shall be exempt from taxation in respect to his, their or its interest under said contract and in respect to the rolling stock and all other equipment of said road, but this exemption shall not extend to any real property which may be owned or employed by said person, firm or corporation in connection with the said road."

The question here for determination is not, as contended by the learned Attorney General, whether exempt property may be made the basis of an estimate of a franchise tax.  That question has been conclusively settled in the courts of this state and of the United States.  The ultimate fact which we here must ascertain is the inten-

tion of the Legislature in passing this section of the rapid transit act. From what taxes was it intended to give immunity?

While it is undoubtedly true that a statute of exemption must be construed strictly, there are other rules of construction which must also be considered in construing this statute, which has become a contract between the state and this relator: First. This language was chosen by the state itself, and as the state dictated its form it should be bound by what at least is fairly implied therefrom. Imperial Shale Brick Co. v. Jewett, 169 N. Y. 143, 62 N. E. 167. Again:

"Where the terms of a promise admit of more senses than one, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee." White v. Hoyt, 73 N. Y. 505.

With these rules of construction in mind, let us look for a moment to the history of this legislation. The problem of transit facilities in New York City has become a most serious one. Greater facilities were imperatively demanded, and demanded speedily. Roads had been constructed upon the surface of the streets and above the streets. The only avenue of relief ·seemed to be subway construction. But that construction required large amounts of money. The franchise was to be sold at public auction. It may fairly be assumed that for the purpose of making this franchise more attractive, and for the purpose of inducing investors to bid therefor, this immunity from taxation was given. If this be the purpose of the enactment, it should be construed as it would be fairly understood by intending purchasers, and not as a deception and a trap. Before this time it had become a part of the policy of the state to tax franchises of corporations. If it had been intended in this act to reserve the right to the state to tax this franchise, in fairness to the investors whose bids were sought, that should have been stated in this statute. It is also significant that by the terms of the statute the property of the company succeeding to the contractor's rights is not made exempt. The person, firm, or corporation owning the contract is exempted "from taxation in respect to his, their or its interest under said contract, and in respect to the rolling stock and all other equipment of said road." I submit that this exemption, so expressed, would be reasonably and even necessarily understood as giving complete immunity to those who invested their money in this contract from all taxation, direct or indirect, in respect thereto. The language hardly could have been broader. The great state of New York cannot afford by any technical construction to limit the fair intendment of its promise. After the passage of this act, and by chapter 908 of the Laws of 1896, section 185 of the general tax law was amended so as to tax the gross earnings of elevated and surface roads not operated by steam. This statute gave no authority to lay this tax upon any road constructed under the rapid transit acts under which this relator was built. This would seem to be a clear recognition by the Legislature of the immunity from all taxation granted by section 35 of the rapid transit act, and constitutes, I submit, a legislative construction of that act.

Strange to say, however, this is the only statute under which the right to lay this tax is claimed. This right is sustained by Mr. Justice

KELLOGG in the prevailing opinion, not upon any right therein given to tax the franchise of the Interborough Rapid Transit Company, but simply upon the right therein given to tax the franchise of any company which owns or operates an elevated railroad, 1 per cent. upon the gross earnings "from all sources within this state." It appears that this same relator, while owning the contract rights under the rapid transit act, also is operating the Manhattan Elevated Railroad in the city of New York, and because of this fact is held by Mr. Justice KELLOGG to have forfeited the exemption, if any, which it would otherwise have under the rapid transit acts. This proposition seems to me radically unsound for two reasons: First. The exemption is given by a special statute. The tax law, which is held to have overruled this exemption, is a general statute. Authority is not needed to the proposition that a general statute presumably does not repeal or modify a special act. The two must be read together, and the relator assessed upon the gross earnings of the Manhattan Elevated Railroad Company, and not upon the gross earnings from the subway constructed under the rapid transit act. Second. This promise of exemption, thereafter acted upon by the relator, became a contract between the relator and the state, which cannot be impaired by any subsequent legislative act, general or special. This rule of law dates back as far as the Dartmouth College Case, reported in 4 Wheat. 518, 4 L. Ed. 629, and has been consistently held from that time to the present. If this property were simply made exempt from taxation, the corporation could confessedly be taxed for the franchise to operate either the subway or the elevated road, and these receipts be made the basis of that tax. If I am right in my construction, however, the statute has gone further, and by fair intendment has not only exempted the property, but has guaranteed immunity to the company operating the road from all taxation, which includes a franchise tax as well. If this be the intendment of the statute, it could not have been within the mind of the Legislature to take from the operating company this immunity simply because the company was operating an elevated road; nor could the Legislature lawfully do so and preserve the inviolability of contract rights under the federal Constitution.

The case of State v. Baltimore & Ohio R. R. Co., 48 Md. 49, presents a very close parallel to the case at bar. There the phraseology of the Maryland act was:

"The shares of the capital stock of said company shall be deemed and considered personal estate and shall be exempt from the imposition of any tax or burthen."

It was thereafter sought to impose a franchise tax upon that corporation, and it was held that the courts were not bound by the literal meaning of the words of the statute, but must look to the connection in which they are used, the subject-matter to which they are applied, and the motives and objects which actuated the Legislature in conferring this privilege. The conclusion of the court in that case, as expressed in the opinion, reads as follows:

"The Legislature, beyond all question, intended to confer a substantial benefit on the company and thereby to induce capitalists and others to invest

their means in the construction of a road which every one deemed of so much importance to the state. And to say that they meant to exempt the shares only, and to reserve the right to tax the property and franchises, is a construction that would render the privileges thus granted of no practical benefit to the appellee. So, considering the question as one of first impression, I am of the opinion that the eighteenth section exempts the property and franchises of the company from taxation. If the franchises are exempt, it would necessarily follow that the gross receipts derived from the exercise of its franchises are also exempt."

In Nichols v. New Haven & Northampton Co., 42 Conn. 103, the language of the exemption was "that the stock and income shall be forever exempt from taxation." The opinion of the court in part reads:

"The charter of the company pretends to hold out inducements to persons to subscribe for the stock. It says: 'Whereas, said canal, if completed, would be of great public utility; therefore, for the purpose of inducing persons to subscribe to the stock of said company, be it resolved,' etc. There can be no escape from the conclusion that this language was intended for deception unless the body politic of the company was intended to be included, and was included in the promised exemption from taxation.

"It is true that all exemptions from taxation are to be construed strictly in favor of the state and against the grantee; but this principle has never been carried so far as to require courts to be governed by the strict letter of the grant, ignoring its manifest import, or so far as to justify bad faith in the making of such contracts.

"It might be claimed with truth that the value of the franchise of a corporation enters into and forms a part of the value of the stock of the corporation. The franchise is valuable in proportion to the yearly net income which the corporation receives and is likely to receive in carrying on its business. The stock of the corporation derives its value to a great extent from the franchise and income together; and in some cases these sources of value double and treble its nominal value. Hence the value of the stock of a corporation embraces the value of its franchise; and consequently, if the stock is exempt from taxation, so must the franchise likewise be exempt. Wilmington R. R. Co. v. Reid, 13 Wall. 264 [20 L. Ed. 568]."

In Pacific R. R. Co. v. Maguire, 20 Wall. 36, 22 L. Ed. 282, the statute provided for an exemption from taxation of the Pacific Railroad, its bed and of its buildings, machinery, engines, cars, and other property. The opinion of the court in part reads:

"In Wilmington R. R. v. Reid, 13 Wall. 264 [20 L. Ed. 568], it was held that a statute exempting all the property of a railroad company from taxation exempts not only the rolling stock and real estate owned by it and required by the company for the successful prosecution of its business, but its franchise also. In the case before us, the roadbed, buildings, machinery, cars, and other property not only, but the 'Pacific Railroad,' is declared to be exempt from taxation. We cannot doubt that a contract not to tax a railroad company or its property is broken by the levy of a tax upon its gross receipts for the transportation of its freights and passengers."

For these reasons I vote for the annulment of the Comptroller's determination.

SEWELL, J., concurs.