# CHARLESTON.

## GAULEY COAL LAND CO. v. KOONTZ.

### Submitted February 1, 1916.    Decided February 8, 1916.

1. STATUTES—*Construction—Rule of "Ejusdem Generis"*.

    The rule of construction designated *ejusdem generis*, limiting the scope or meaning of general words, such as "other" and "otherwise," used in connection with definite and specific enumerations, to things of the class or faimily of those named, has no application when the context manifests intention to give them a more extensive meaning and effect. (p. 585).

2. TAXATION—*Delinquent Taxes—Notice of Sale—Curative Statute— "Or Otherwise."*

    The phrase, "Or otherwise," in the curative clause of sec. 6, ch. 31, Code, ser. sec. 1064, relating to the sheriff's notice of sale of delinquent lands, providing that "No sale of any such real estate as is sold by such sheriff, as aforesaid, or deed therefor to the purchaser thereof, shall be, in any way or manner affected by reason of any mistake in the publication, or posting, of such list or notice, * * * as to the name of the owner, the quantity or location thereof, the amount for which it is to be sold, the year or years for which it is delinquent, or otherwise, read in connection with the clause of sec. 25, ch. 31, Code, ser. sec. 1084, vesting title in the grantee of a tax deed, notwithstanding any irregularity in the proceedings under which the land was sold, not therein provided for, unless such irregularity appear on the face of the proceedings of record in the office of the clerk of the county court, which is a part of the context, extends to everything in the notice, and is not limited to things of the class of those specifically named. (p. 585).

3. SAME—*Tax Sale—Notice—Irregularity.*

    As such notice is not required to be recorded, wherefore it is not a part of the proceedings of record, neither a tax sale nor deed can be set aside for any mere mistake or irregularity therein. (p. 585).

4. SAME—*Tax Sale—Notice—Cure of Defects.*

    The curative provision of said sec. 6 of ch. 31 of the Code relieves from, and renders harmless, mistakes consisting of the publication and posting of such a notice for periods shorter than those prescribed by the statute. (p. 585).

5. SAME—*Tax Sale—Notice—Clerical Mistake—Cure by Statute.*

    A clerical or typographical mistake in such a notice, self-corrective in the light of the law and common knowledge, is cured and rendered innocuous by said clause. (p. 590).

6.  SAME—*Tax Sale—Notice—Preparation and Publication.*

> Whether a month and three or four days is sufficient time for the preparation and publication of a notice of a sale of delinquent lands, which the statute requires to be advertised for four weeks, cannot be judicially determined without knowledge of the character of the list to which it relates.   (p. 584).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Fayette County.

Suit by the Gauley Coal Land Company against J. M. Koontz.   From decree for plaintiff, defendant appeals.

*Reversed and bill dismissed.*

*Dillon & Nuckolls,* for appellant.

*Brown, Jackson & Knight, Angus W. McDonald,* and *Robert T. Hubbard, Jr.,* for appellee.

POFFENBARGER, JUDGE:

The disposition of this appeal from a decree setting aside a tax deed involves but two questions that merit consideration; (1) whether a sheriff residing fifty three miles from the state Capital, receiving a list of delinquent lands, mailed to him by the Auditor, on the 1st day of November, has time to advertise the sale for the first day of a term of court commencing on the 5th day of December; and (2) whether a mistake in a notice of sale of delinquent lands, as to the time of the sale, invalidates a sale made on a day on which it could have been made under presumptively existing circumstances.

If a sheriff does not receive the list of delinquent lands in time to make his sale on any one of certain prescribed days in the months of November and December, after having given notice for four consecutive weeks, by publication, he is required to advertise it for the first day of a circuit or county court, which ever may be held first in the succeeding year next after publication of his notice of sale.   Chapter 31, sec. 6, ser. sec. 1064.

As some time is required for the preparation of the notice of the sale for the use of the publisher and an additional period for putting it in type, it cannot be said, as matter of law, that one month and three or four days would be sufficient

time for compliance with all of the precedent legal require-
ments of a sale of delinquent lands.  After preparation, the
notice must be published once in each week for four consecu-
tive weeks before the day of sale.  Nothing in the record
indicates the number of tracts certified for sale in Fayette
County in the year 1905. Hence, it would be impossible to
say how much time was required for the preparation of the
notice, after the receipt of the list of lands, or for the composi-
tion thereof in type at the printing office.  Obviously some
notices require, for each purpose, more time than others.  The
evidence of delay is too slight to call for any decision as to
what discretion, if any, the officer has, respecting haste in the
publication of his notice, what would be a reasonable time
for preparation or what the effect of unreasonable delay
would be.

Not having received the list in time to commence the sale,
on the first day of the term of court, beginning December 5,
1905, the sheriff evidently intended to advertise it for the first
day of the term commencing January 23, 1906, but, for some
reason, the notice, when first published on November 23, 1905,
gave the date of the sale as ''December 23, 1906.''  After two
more publications, November 30th, and December 7th, 1905,
the date was corrected so as to read ''January 23, 1906,''
Thereafter, three more publications were made, on December
14th, 21st, and 28th, 1905.  Counsel for the appellant insist
that this error is cured or rendered harmless by a provision of
sec. 6 of ch. 31 of the Code, ser. sec. 1064, which reads as fol-
lows:  ''And no sale of any such real estate as is sold by such
sheriff, as aforesaid, or deed therefor to the purchaser thereof,
shall be, in any way or manner affected by reason of any mis-
take in the publication, of such list or notice,  *  *  *  as to
the name of the owner, the quantity or location thereof, the
amount for which it is to be sold, the year or years for which
it is delinquent, or otherwise.''  In addition to this, the cura-
tive provisions of sec. 25 of said ch. 31, are relied upon.

The mistake in question is not one of those specifically
mentioned in the curative clause found in sec. 6 of ch. 31.
Whether the phrase ''or otherwise,'' general in its terms,
reaches it and relieves therefrom, depends upon whether the
rule of construction, indicated by the phrase *ejusdem generis,*

applies. Ordinarily that rule limits the scope and operation of such general terms, used in connection with specific ones, to things of the same class or family as those specifically mentioned. *Robinson* v. *Dix*, 18 W. Va. 528; *Gibbs* v. *Richmond*, 103 Va. 702, 705; *Commercial Union Assurance Co.* v. *Everhart*, 88 Va. 952; *Lynchburg* v. *Railroad Co.*, 80 Va. 237; Lewis' Southerland Statutory Construction, sec. 422; 26 Am. & Eng. Ency. L. 609; 36 Cyc. 1119. This rule, however, has its well established and recognized exceptions. If the context discloses legislative intention to give effect to the general words, they are not limited and restrained to the class of cases specifically mentioned. *Commonwealth* v. *Percavil*, 4 Leigh (Va.) 686; *Maxwell* v. *People*, 158 Ill. 255; *Willis* v. *Mabon*, 48 Minn. 140; *Woodworth* v. *State*, 26 O. St. 196; *Martin* v. *State*, 156 Ala. 89; *Grissall* v. *Railroad Co.*, 54 Conn. 447; *Peirce* v. *Richardson*, 9 Metc. (Mass.), 69; *Brown* v. *Corbin*, 40 Minn. 508; *State* v. *Kelly*, 32 O. St. 421. The general words are not limited or restricted, when the things specifically mentioned greatly differ from one another in nature and kind, for the application of the rule then ceases with the reason for its existence. Varying greatly in nature, the specific things mentioned do not signify any intention to explain the general terms added. 26 Am. & Eng. Ency. L. 610. Nor does the rule apply when the particular words exhaust the entire genus or family. In such case, the general words must necessarily go beyond the family or class of things mentioned, else they cannot have any effect at all. Nothing of that family remains upon which they can operate. To deny any effect at all, is a violation of another rule of construction requiring effect to be given to every word, when such a result is possible. *McKeon* v. *Wolf*, 77 Ill. 335; *Fenwich* v. *Schmalz*, L. R. 3 C. P. 316; *Cement Co.* v. *Cooper*, 88 N. E. 89; 26 Am. & Eng. Ency. L. 610; 36 Cyc. 1122; Lewis' Southerland Statutory Construction, sec. 436.

None of the mistakes specifically mentioned in the statute and rendered harmless thereby, pertain to the time of sale. They are limited to the identity of the land and the cause of sale, and they relate to things required to be shown in the Auditor's list and what is designated in the prescribed form of notice, as a "Table." This table provides spaces for the

names of the owners, quantities of land, local descriptions thereof, amounts necessary to redeem before sale and the total amounts of taxes, interest, costs of publication, commissions and fees for receipts. As to mistakes in it, the words are very comprehensive and exhaustive. No mistake as to the name of the owner, the quantity of the land, the location thereof, the amount for which it is to be sold or the year or years for which it is delinquent, invalidates. Nothing is said about a mistake as to the amount necessary to redeem, a thing the table is required to show, nor about the form of the table. In it and the list to be posted with a copy of the notice, numerous mistakes not mentioned might occur. The more vital matters of the notice are the time and place of sale, limitation of the sale to so much of each tract as shall be sufficient to satisfy the amount due thereon, and the right of redemption. None of these are among the things specifically mentioned and they are higher and more vital in character than those so named. Errors in the list and the table, beyond those named, would be of their general nature and kind. The table and list are records of past transactions of which the interested parties have presumptive knowledge. A land owner ought in the nature of things to know whether his land has been assessed and returned delinquent for non-payment of the taxes thereon. For these matters he is not dependent upon the list and notice alone. For information as to when the sale will take place, a future act, he must depend upon the notice or an inquiry. As the law provides for notice, the legislature may have intended that he might rely upon it alone. Manifestly, the matters as to which mistakes are specifically cured differ in nature from the time of the sale. In view of this difference, there may be deep significence in the silence of the curative clause as to matters not embraced in the list and table. Therein the legislature may have tacitly marked a distinction and made a classification based upon reason. Nothing in section 6 expresses legislative purpose to relieve from mistakes as to things not of the class of those named. The prescription of certain columns for certain data may be ignored. Some of the headings may be wrong. There may be errors in numerous matters in the list, not required to be embraced in the notice. The amount nec-

essary to redeem might be wholly omitted. These possibilities afford ample ground for operation of the phrase upon things kindred to those named. The genus is by no means exhausted.

Beyond section 6, there is a provision in section 25 of the same chapter, which constitutes a part of the context, since it and sec. 6 relate to the same general subject, sales of delinquent lands. In different forms, but having the same purpose and effect, they were parts of the Act of Feb'y. 9, 1814. In that old act, one clause required publication of notice, and the other denied all right to question the regularity of the proceedings, after the period allowed for redemption, so as to affect the title of the purchaser, unless such irregularity appeared on the face of the proceedings. Some exceptions, not material here, were provided for. As amended and now found in sec. 25, ch. 31, Code, this provision vests title in the grantee in the deed to a tax sale purchaser, ''Notwithstanding any irregularity in the proceedings under which the land was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court.'' Neither by the Act of 1814, nor by any subsequent act, is the notice of sale required to be recorded. Hence, an irregularity or mistake in it could not legally appear on the face of the proceedings, and it was held in *Flanagan* v. *Grimmett,* 10 Gratt. 421 and *Hobbes* v. *Shumates,* 11 Gratt. 516, not only that publication of the notice was an act *in pais,* not required to be recorded, but, also, that a mistake or defect in the publication constituted no ground for relief against a tax deed. Then the statute was silent as to a mistake in the notice. Now it deals with that subject, and an inquiry arises as to whether the amendment, dealing with it, has modified the general curative provision of the Act of Feb'y. 9, 1814 and sec. 25 of ch. 31 of the Code.

The Act of 1814 prescribed a very general form of notice to the effect that, on the day fixed by law for sale of delinquent lands, all of such lands in the county would be sold, and that lists thereof might be seen in the clerk's office of the county, in the possession of the sheriff, or in the office of the Auditor. No list or abstract thereof was required to be published or posted. In the revision made by ch. 117 of the Acts of 1872, this method was not materially altered. It was modified by

ch. 130 of the Acts of 1882, which provided for the publication and posting of the list of delinquent lands along with a notice of sale, the form of which was not prescribed. In this act, there appeared, for the first time, the curative clause of sec. 6, and it extended, in express terms, to the two separate papers, the notice and the list, wherefore it could not be limited to the list alone. By ch. 57 of the Acts of 1883, the section was again amended and put into its present form. It dispenses with publication of the list. In lieu thereof, an abstract of it, in tabular form, is required to be incorporated in the notice and a copy of the notice, as published, including the table, is required to be posted at the front door of the court house, with a copy of the list. The curative clause was not altered in any respect. It reads now exactly as it did in the act of 1882, when its terms expressly extended to the notice as well as the list. They applied to the informal notice required by the act of 1882. That notice has been enlarged so as to include an abstract of the list, and the list still has to be posted. The terms of the curative clause still go to the enlarged notice and the list.

Under no rule of interpretation, could the phrase ''Or otherwise,'' as it stood in the act of 1882, have been limited in its operation, to the list alone. Though the mistakes enumerated in the preceding words of the clause all related to things shown only on the list, the words of the clause expressly included the notice, a separate paper. In this extension of the words of the clause to the notice, the legislature expressed its intention to make the general phrase at the end thereof go to things in the notice, notwithstanding the difference in character between them and those enumerated. To reach the notice, as the clause said it should, it had to go beyond the enumerated subjects, for none of them were in the notice. This expression of intention to make the clause extend to the notice as well as the list was the manifestation of legislative purpose to adhere to the policy of the old act of 1814, as it had been defined by the two decisions above referred to, and not to limit or modify the provision inhibiting contestation of tax deeds, on irregularities not appearing on the face of the proceedings. The enlargement of the notice by the act of 1883, so as to make it include an abstract of the list, does not indicate

any intention to alter the purpose of the clause. Not a word put into the section by way of amendment deals with the subject of mistakes or the effect thereof. The clause means now just what it meant in the act of 1882.

Whether omission to publish the notice at all would vitiate the sale, we are not called upon to determine. There was a notice and, as published for three successive weeks before the sale, it was free from error. It was defective only in respect of the period of publication and posting. It was very much like the mistake disposed of in *Flanagan* v. *Grimmett*, failure to publish the notice for a sufficient period. By a recital in the deed, it appeared to have been published for two months instead of the legal period of three months. The court held the recital of compliance with the statute, as to the time of publication, was unnecessary. Going beyond this, Judge Allen, speaking for the court, said: "Nor do I conceive that such deed could be questioned by parol proof of a failure to advertise the sale as the law prescribes." The judgment entered in the cause adopted this view, saying: "It seems to the court here   *   *   *   that after the time for redemption allowed by the 36th section of said act shall have elapsed, it would not be competent by parol testimony, to impeach such deed for such failure." This conclusion was repeated and applied in *Hobbes* v. *Shumates*, cited. These two decisions are as authoritative here as if they had been rendered by this court.

The imperfection of the notice, when first published, might have occasioned inconvenience, but would probably not have mislead anybody. The error was a mere clerical or typographical one, self-corrective in the mind of an intelligent man. Knowing the law, or having it in his power easily to ascertain it, he would have at once observed the error and seen that the notice was intended for Jany. 23rd instead of Dec. 23rd. Almost every citizen knows when the terms of court are held in his county, and the usual dates of delinquent land sales. Anybody ought to know these sales are not advertised for a whole year, and that the law makes no provision for a publication of that length. Any prudent man interested in such a sale and seeing such a notice would at once make an inquiry as to the true date and ascertain it. The necessity

of stability in tax sales, as an inducement to purchasers, to the end that the state may not be delayed in the collection of her indispensable revenues, justifies the policy of refusing to allow them to be set aside for such slight errors; and improbability of injury from them, to any person exercising judgment and diligence for protection of his property, affords an ample basis for legislative powor to adopt and maintain that policy. The owner knows whether he has paid his taxes. the public records, open at all times to his inspection, disclose the return of delinquency. The law tells him a sale of his property to satisfy the state's demand for her taxes will inevitably follow, unless he redeems, and at about what time he may expect it. After it has been sold, the fact with the name of the purchaser, is published together with information that he may redeem within one year, by payment of a sum only slightly above the taxes and interest. Under such a system, the loss of a person's land by a tax sale can be attributed to nothing other than his legal or actual negligence. Again sound policy demands that a citizen buying land at a tax sale shall have reasonable protection for his investment made on the invitation of the state. The return of his money with interest and taxes subsequently paid does not always afford it. He may lose the expense of costly improvements by the vacation of his deed, or became liable on his covenant of warranty for money he never expected to pay and payment of which will occasion a ruinous sacrifice of his property.

The conclusion here indicated may not be inconsistent with some recent decisions of this court, in which tax deeds have been set aside for matters not disclosed by the proceedings of record in the clerk's office. In *Lohr* v. *George et al.*, 65 W. Va. 241, and *Coal & Coke Ry. Co.* v. *Marple*, 70 W. Va. 136, deeds were set aside for fraudulent conspiracy on the part of the purchasers and others, stifling competition in the bidding. These decisions may be justifiable on the ground that fraud vitiates everything into which it enters. The statute does not, in terms, relieve from consequences of fraud. In *Hardman* v. *Brannon*, 70 W. Va. 726, a tax deed was set aside, because the sale was made on a day not appointed by law. This may be justifiable on the ground of total want of authority in the officer at the time at which he attempted to make

it. Because not given for a day on which he had authority to sell, his publication may not have been a notice at all, in the legal sense of the term. Whatever the status of these decisions may be, the facts involved were neither identical with those presented here nor similar to them. They are not precedents justifying the overthrow of this deed and the principles here declared do not necessarily impeach them.

For the reasons stated, the decree complained of will be reversed and the bill dismissed.

*Reversed and bill dismissed.*