GREENE LINE TERMINAL COMPANY *v.* W. M. MARTIN,
*Assessor, etc.*

(No. 9077)

Submitted September 4, 1940.  Decided October 1, 1940.

*F. M. Livezey,* for appellant.

*Clarence W. Meadows,* Attorney General, *W. Holt Wooddell,* Assistant Attorney General, and *E. E. Winters, Jr.,* for appellee.

MAXWELL, JUDGE:

This is a statutory proceeding for the review of an assessment of property for taxation purposes. A leasehold is the subject involved. The property owner opposed the assessment, and, its objections not having prevailed in the circuit court, it was awarded this writ of error.

A leasehold, separate from the fee from which it has been carved, is property "which the law recognizes as a thing of value, but is incorporeal and intangible in its nature." *Dillon v. Bare & Carter,* 60 W. Va. 483, 490, 56 S. E. 390, 393. Consult: *Coal & Coke Co. v. Dillon,* 59 W. Va. 605, 53 S. E. 928. A leasehold is "an estate in realty held under a lease." *Hayes v. City of Atlanta,* 1 Ga. App. 25, 57 S. E. 1087, 1089. And a lease is a letting out of property for use during a definite period, always for a shorter term than the lessor has in the premises. A lessor may be a public agency, or a private person, either corporate or individual. A leasehold, however, is to be distinguished from a franchise. The latter is "a branch of the sovereign power of the State, subsisting in a person or a corporation by a grant from the State." *Rochester, etc., Railroad Co. v. New York, etc., Railroad Company* (N. Y.), 44 Hun. 206,. 212. Originally a franchise was considered as a royal privilege or prerogative emanating from the king. *Commonwealth v. Arrison,* 15 Serg. & R. (Pa.) 127, 16 Am. Dec. 531. A city, under investiture from the state, is clothed with sovereign authority to grant franchises, as for example, the usual and familiar grants to public utility companies. If, however, a contractual undertaking of a city pertains merely to the use through a definite period of certain real estate owned by it, being such a letting as a private in-

dividual might make of similar property, the result should be considered a leasehold and not a franchise.

The property herein involved was brought into being by an instrument, denominated in its caption a deed, executed by the City of Huntington July 18, 1904, whereby there was "leased" to R. E. Vickers, as the Huntington Wharf & Storage Company, and his assigns, for a period of fifty years, a public wharf on the Ohio River at the foot of Tenth Street within the corporate limits of the city, the demised premises being in the fee simple ownership of the city. By the instrument of July 18, 1904, R. E. Vickers, therein denominated "lessee", and his assigns, are required to maintain and operate the premises at all times as a public wharf, in accordance with conditions and requirements imposed by the instrument. In the light of the definitions and terminology hereinabove first discussed, we consider that there is herein involved a leasehold estate, created by a lease, and that we are not dealing with a franchise as insisted by the complainant.

In January, 1926, the Huntington Wharf & Storage Company, a corporation, successor of R. E. Vickers, assigned and conveyed its rights, privileges and holdings under the lease of July 18, 1904, unto Greene Line Terminal Company, complainant (plaintiff in error on this review), which from that time to and including the present, has operated the wharf in question. Greene Line Terminal Company, for the year 1927 and subsequently, has been assessed with both real and personal property pertaining to the wharf and terminal business conducted by it, and it has paid the taxes levied on those assessments. The real estate assessment has been in respect of certain lots, property of complainant, other than the ones owned by the city and embraced in the lease; and the personal property taxed did not include the leasehold.

Prior to 1939, no assessment was made by public authority on the leasehold whereunder the complainant occupies and operates the Tenth Street wharf, but in that year, the defendant, W. M. Martin, assessor of the county of Cabell, acting with the approval and under the direction of the de-

fendant, Ernest K. James, Tax Commissioner for the State of West Virginia, assessed, over the protest of the complainant, the leasehold for taxation, and entered it for back taxes for the years 1935 to 1938, both inclusive. The amount of the assessment then came before the county court of Cabell County, which body sitting as a board of equalization and review, under Code, 11-3-24, placed against complainant's leasehold an assessment of $12,500.00 for the year 1939 and the same valuation for each of the four preceding years. Thereafter, the complainant, acting in pursuance of Code, 11-3-25, petitioned the Circuit Court of Cabell County for relief from that assessment. That court denied the relief sought, and the taxpayer thereafter was by this Court granted a writ of error which brings the matter now for this review.

Complainant's first proposition is that "the property with respect to which the franchise or lease is granted belongs exclusively to the City of Huntington, a municipal corporation, and is used for a public purpose, and is, therefore, exempt from taxation," under Code, 11-3-9. That section of the statute exempts from taxation "property belonging exclusively to any county, district, city, village, or town in this state, and used for public purposes." In support of the applicability herein of such exemption, the complainant maintains that under the quoted statutory provision the Tenth Street wharf could not be assessed for taxation if it were being operated directly by the city, its owner, and inasmuch as the city's lessee is operating the property for public use, the exemption should apply to the lessee the same as it would be applied to the city if it were the operator. The answer to this proposition must depend on whether the complainant is operating the wharf primarily as a public service, or as a private enterprise for profit. If the former, the exemption carries through to the lessee; if the latter, the exemption does not apply. Typical cases in the first group: *People* v. *Assessors of the City of Brooklyn,* 111 N. Y. 505, 19 N. E. 90, 2 L. R. A. 148; *People* v. *State Board of Tax Commissioners,* 126 App. Div. 610, 110 N. Y. Supp. 577; and in the second

group: *San Pedro Rd. Co.* v. *Los Angeles,* 180 Cal. 18, 179 Pac. 393; *Ex Parte Gaines,* 56 Ark. 227, 19 S. W. 602; *Trimble* v. *Seattle,* 231 U. S. 683, 34 S. Ct. 218, 219, 58 L. Ed. 435. In the *Trimble* case, which involved public improvement assessments against leaseholds which had been created by the state on public lands, the Court said: "When an interest in land, whether freehold or for years is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property and therefore is subject to being taxed."

By the terms of the lease of 1904, the lessee was required to account to the city for all wharfage fees collected by him, less ten per centum thereof to be retained by him as commission. Also, the lessee was required to pay the city an annual license fee of two hundred dollars. By an ordinance passed in 1929 modifying the terms of the original lease, the provision thereof imposing wharfage fees to be accounted for by the lessee, its successors or assigns, was cancelled; and the flat sum to be paid to the city per annum as a license fee was reduced from two hundred dollars to one hundred dollars. The 1929 liberalization of the requirements of the lease opened the way for the complainant to operate the wharf more advantageously from a profit viewpoint. It appears from the complainant's petition filed in the circuit court that in connection with the operation of the wharf the petitioner maintains and conducts a terminal or warehouse at the top of the river bank above the wharf, linked with the wharf at the foot of the bank by an incline for the moving of freight. This set-up, embracing more land than is covered by the lease, indicates an extensive business enterprise. The doubt, if any, whether complainant is operating the terminal and wharf primarily for profit, or as a public instrumentality, must, under the circumstances, be determined against complainant. Any ambiguity respecting an exemption from taxation must be resolved against the taxpayer and in favor of the public. *J. W. Perry Co.* v. *Norfolk,* 220 U. S. 472, 31 S. Ct. 465, 55 L. Ed. 548.

The second proposition of the complainant is this: "That no other franchises or leases are listed and assessed for taxation in the County aforesaid, and it is therefore unlawful to list and assess the franchise or lease aforesaid to this Petitioner, because such assessment will result in unequal and non-uniform taxation, in violation of Article X, of the Constitution of West Virginia and such assessment denies Petitioner the equal protection of the laws in violation of Amendment XIV, of the Constitution of the United States." Reliance is had upon this Court's holding in the case of *West Penn Power Co.* v. *Board of Review,* 112 W. Va. 442, 164 S. E. 862 syllabus point two, reading: "Under the Fourteenth Amendment of the Constitution of the United States it is the right of a taxpayer whose property is taxed at one hundred per centum of its true and actual value to have his assessment reduced to the percentage of that value at which other properties of the same class in the same governmental unit of taxation are taxed, even though the statute requires that all property be taxed at its true and actual value." In that case it appeared that the taxpayers' property, an electric power plant, was assessed at its true and actual value, whereas other properties in the same taxing unit were habitually assessed at eighty per centum of their true value, hence, an unfair and unconstitutional discrimination against the owners of the power plant. Meeting the charge of discrimination in the instant case, the assessor of Cabell County testified that other leaseholds pertaining to real estate within that county are in fact assessed for taxation either by the board of public works or by the assessor of the county; that leaseholds or franchises of public service corporations are assessed by the board of public works under Code, 11-6-11, and that private leases are taken into consideration by the assessor in fixing the assessment valuations on the real estate underlying the same. But the leasehold at bar was properly assessed separately from the real estate whereon it is based because the latter, being city property in public use, is exempt from taxation. The property's public use operates to the benefit of the city,

thereby relieving it from county and state taxes, but this exemption does not carry through for the benefit of the owner of the leasehold because the public service rendered by the lessee is only incidental to a business for profit.

The third point of reliance of complainant may be thus stated: That neither the assessor nor the county court has authority to assess the leasehold in question for taxation purposes, because complainant is a public service corporation and its holdings could be properly assessed only by the board of public works under Code, 11-6-11. The stated section places on the board of public works the responsibility and duty of assessing for taxation the properties of all public service corporations whose properties are located wholly or in part within this state.

We are of opinion that in respect of the assessment of complainant's leasehold, there was presented a procedural or administrative matter, and even if the assessment was erroneously made, the taxpayer, because of its failure to make a return of its property to the board of public works as is required of a public service corporation by Code, 11-6-1, is not in position to take advantage thereof, if, in fact, complainant is entitled to be classified as a public service corporation for purposes of assessment and taxation.

The fourth point is that if the leasehold in question is taxable, there was error in permitting it to be back taxed for a period prior to 1939. It is provided by statute (Code, 11-3-5) that real and personal property (other than money and intangibles) subject to taxation, omitted from the tax books "for a period of less than five years", shall be entered by the assessor for taxation and charged with taxes at the fixed rates for the years it was omitted. (In the third paragraph of that section special provision is made respecting money, notes, bonds and the like which have been omitted.) Complainant urges that "the literal meaning of the statute seems to be that if property is omitted for more than five years, there is no power to back tax for years before the current year." Land not

charged with taxes for five successive years becomes forfeited to the state. Code, 37-3-2. That is why the back taxing of real estate is limited within a five-year period. The legislative application of the same period to personal property seems to have been a matter of policy and convenience, and we construe the statute as placing a limitation on the period for which personal property may be back taxed rather than to release it from such burden in cases where it has been omitted from the tax books for five years or more. To hold it not subject to such back tax would be to favor that particular class of property over others, and depart from the principles of uniformity in taxation. Inasmuch as personal property does not become forfeited to the state for non-assessment, we perceive no reason why it may not be entered on the personal property books for taxation, and back taxed as was done in this case. Herein, the tax was laid for the current year of 1939, and for the four preceding years. Such course was clearly within statutory authorization. It is interesting to note that in the third paragraph of Code, 11-3-5, back taxing of "moneys, notes, bonds, bills and accounts receivable, stocks and other intangible personal property" is authorized and directed *for five years or less,* and not merely for a period of *less than five years* as required in the second paragraph respecting tangible personal property.

Complainant's fifth point of challenge of the assessment which has been made of its leasehold is that if this property is taxable it should be listed and taxed under Class I of the classification statute, and not under Class IV as was done. The statute here invoked (Code, 11-8-5) follows:

"For the purpose of levies, except as provided in section twenty-three of this article, property shall be classified as follows:

"Class I. All tangible personal property employed exclusively in agriculture, including horticulture and grazing;

"All products of agriculture (including livestock) while owned by the producer;

"All money and all notes, bonds, bills and accounts receivable, stocks and any other intangible personal property;

"Class II. All property owned, used and occupied by the owner exclusively for residential purposes;

"All farms, including land used for horticulture and grazing, occupied and cultivated by their owners or bona fide tenants;

"Class III. All real and personal property situated outside of municipalities, exclusive of classes I and II.

"Class IV. All real and personal property situated inside of municipalities, exclusive of classes I and II."

Complainant's reliance under this point is based on the phrase "other intangible personal property" appearing in the last paragraph under Class I. The taxpayer urges that inasmuch as the leasehold is unquestionably intangible personal property it is obviously included within the designated and quoted phrase and should be incorporated within that group of Class I. The difference in rate is material, for under Class I, the maximum rate is fifty cents per one hundred dollars of valuation, and under Class IV, the maximum is two dollars. See constitutional amendment. Infra.

The proposition thus advanced by the taxpayer respecting the classification of its leasehold cannot be approved. The phrase "other intangible personal property", appearing at the end of paragraph three under Class I, follows immediately after the specific mention of money, notes, bonds, bills, accounts receivable, and stocks. Under the familiar rule of *ejusdem generis* the general or inclusive phrase must be deemed to apply to things of the class or group specifically denominated and enumerated. This rule of statutory construction is applicable except where a context is such as to manifest a legislative intention to give to the general words a more extensive meaning and effect. *Gauley Coal Land Co.* v. *Koontz,* 77 W. Va. 583, 87 S. E. 930. Other than money, the things enumerated in the

statutory paragraph under consideration are of the same family or group, namely, evidences of debt, and they are not inclusive of all the members of that family or group, as for example, due-bills, certificates of time-deposit, and recitals of indebtedness in deeds, mortgages or deeds of trust where no note for the debt has in fact been given. So, we are impressed that the general language used at the end of paragraph three under Class I was intended to apply to other evidences of indebtedness, and not to matters of a different nature. This conclusion is accentuated by reference to the State Constitutional Amendment of 1932. (Constitution of West Virginia, Article X, Section 1.) The classification statute is grounded on that amendment, wherein there is provision that there shall not be a tax exceeding fifty cents on each one hundred dollars valuation "upon personal property employed exclusively in agriculture, including horticulture and grazing, products of agriculture as above defined, including live stock, while owned by the producer, and money, notes, bonds, bills and accounts receivable, stocks and other similar intangible personal property." Note the word "similar" therein used, and omitted from the statute; but though omitted, the constitutional intent must be read into the statute. All of which leads to the conclusion that a leasehold should not be assessed and taxed under Class I on the theory of its being "other intangible personal property," but should be placed under Class III or Class IV, depending on whether the real estate which supports it is located without or within a municipality.

And, this analysis respecting the proper grouping whereunder to place a leasehold, is logical and proper in the light of general authority. Though a leasehold is intangible personal property—a chattel real—it possesses characteristics peculiar unto itself; it constitutes an interest in land, whereas other intangibles do not; it is immobile, and thereby differs from other intangibles such as evidences of debt, which may be moved with the person. *Moulton* v. *Long,* 243 Mass. 129, 137 N. E. 297; *Milliken* v. *Faulk,* 111 Ala. 658, 20 So. 594; *Orchard* v. *Wright, etc.,*

*Store Co.;* 225 Mo. 414, 125 S. W. 486, 20 Ann. Cas. 1072. Chattels real, therefore, are not to be grouped with intangibles evidencing indebtedness, which are chattels personal. Consequently there was no error in placing the instant leasehold under Class IV, and not under Class I.

Perceiving no error in the circuit court's action, we affirm the judgment.

*Affirmed.*