ROBERT W. PARKINS
*v.*
JOSEPH W. LONDEREE, MAYOR, ETC., ET AL.

(No. 12151)

Submitted February 27, 1962. Decided March 20, 1962.

*E. Franklin Pauley,* for relator.

*George W. Stokes,* for respondents.

CALHOUN, PRESIDENT:

In this original proceeding in mandamus, Robert

W. Parkins, who will be referred to herein as the petitioner, seeks to require the respondents, Joseph W. Londeree, Mayor, Cecil Washburn, Recorder, Cleo Johnson, Treasurer, and Arnold Lee, C. F. Woolwine, Gordon Murray, Lawrence Haggerty, Leslie Evans, Woodrow McComas, Archie Schoonover, and Andrew Kennedy, members of the Council, of the City of South Charleston, to "strike from their records as null and void, the resolutions appointing Lina Mahoney, Clella Haynes, and Jenenne Frodgue to" certain positions of employment which will be described subsequently herein.

The basis of the relief sought is that the three persons named above were not employed in accordance with the civil service procedures and requirements applicable to police departments in municipalities having a population of five thousand or more, as provided in Chapter 57, Acts of the Legislature, 1937, Regular Session, now appearing as Article 5A, Chapter 8 of the Code, 1931, as amended. There is thereby presented for decision the question whether the positions in which such three persons are employed come within the purview of such statutory provisions.

The respondents filed a demurrer and an answer to the petition. The pertinent facts are not in controversy. The demurrer is predicated on four grounds as follows: The petition fails to disclose a clear legal right in the petitioner to the relief prayed for therein; the petition discloses on its face that Lina Mahoney, Clella Haynes and Jenenne Frodgue are not policemen, officers or other employees covered by the civil service statutes; the petitioner has failed to exhaust the administrative remedies before the civil service commission of the municipality and hence mandamus does not lie; and the members of the civil service commission and the three employees involved in this proceeding are necessary parties.

We do not believe that the three persons whose employment is questioned herein, or the members of

the municipal civil service commission are necessary parties to this proceeding in mandamus. *State ex rel. Evans v. Kennedy,* 145 W. Va. 208, 115 S. E. 2d 73, 78. Nor do we believe that the petitioner was required to exhaust any sort of administrative remedy as a prerequisite to a right to maintain this proceeding in mandamus. It is true that Section 13 of the act in question prescribes a certain procedure for removal, discharge, or reduction in rank of a ''member of any police department'' within the terms of the act. We believe, however, that such procedures are intended to apply to persons properly and lawfully employed and do not purport to afford a remedy to question the legality of an appointment or to adjudicate principles of law. The question primarily dealt with in the briefs and oral arguments involves the basic question pertaining to the legality of the employment of Lina Mahoney, Clella Haynes, and Jenenne Frodgue.

On June 5, 1958, the respondents employed Lina Mahoney and Clella Haynes to check the working condition of the parking meters within the city; to make certain minor repairs thereto; and to issue notices, in a form hereinafter described, to persons guilty of parking vehicles without having deposited sufficient money in such parking meters. The notices referred to above are in the form of brown envelopes, approximately three inches by five inches in size. On one side of each envelope is a place for supplying the date and the hour of the violation, the license number of the motor vehicle involved, and the amount of the monetary penalty for overtime parking. The penalty indicated on the envelope is twenty-five cents for one-half hour, fifty cents for one hour, sevently-five cents for two hours, one dollar for three hours, and two dollars for four hours. Thereunder the following language is printed:

"You have violated an ordinance of the City of South Charleston West Virginia governing the parking of motor vehicles in metered spaces.

"You may pay for this violation by placing in this envelope the amount encircled above and by then placing the envelope in a Meter Violation Collection Box or by delivery to Police Headquarters.

*"PENALTY*

"Failure to comply with the above directions within 24 hours may result in a warrant or summons requiring your appearance in Municipal Court to answer for such failure."

The two women thus employed for such duties in relation to parking meters were not employed in conformity with the civil service statutes referred to above. They are paid from funds of the police department of the municipality, but perform no duties other than those enumerated above. They have taken no oath of office and have posted no bond as required of police officers. They make no arrests, do not carry firearms, and do not procure the issuance of warrants of arrest. They work under the supervision of the mayor and chief of police. After such notices are issued by them, an ''original'' thereof is delivered to the traffic clerk, and thereafter Lina Mahoney and Clella Haynes take no further action in relation to collecting the prescribed monetary penalty for the parking violation, nor do they collect the money from the parking meters.

On August 1, 1961, Jenenne Frodgue was employed by the respondents as traffic clerk for the municipality. Her employment was not in accordance with the civil service statutes referred to earlier herein. She is not paid from funds of the police department. Her duties are of a clerical and stenographic nature. She works under the direction of the mayor and chief of police. She performs certain clerical services for the police department, but she also performs certain clerical, stenographic and other duties for the city which have no relation to the police department. She receives payment of fines for parking violations and in that connection has posted a bond in the penal sum of one thousand dollars. Such fines also may be paid directly to the city treasurer. She receives the original

of notices issued by Clella Haynes and Lina Mahoney to motorists guilty of violations of city ordinances relating to parking meters as stated above, and occasionally she sends notices to persons who are delinquent in paying fines or monetary penalties for overtime parking. She has taken no oath of office. She performs no duties for the city other than of the nature stated above.

Robert W. Parkins, the petitioner, is a citizen and resident of the City of South Charleston. Since August 15, 1954, he has been employed as a policeman of the municipality, and at the present time he holds the rank of patrolman.

Section 1 of the act in question is as follows: "All appointments to and promotions in all paid police departments of cities and municipalities of five thousand population or more, shall be made only according to qualifications and fitness to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. On and after the date this act takes effect no person except the chief of police shall be appointed, reinstated, promoted or discharged as a paid member of said department of any city or municipality in the state of West Virginia subject to the provisions hereof, in any manner or by any means other than those prescribed in this act." Section 2 is, in part, as follows: "There shall be a 'civil service commission' in each city or municipality of five thousand population or more, having a police department, in which members thereof are paid by said city or municipality." A portion of Section 6 is as follows: "The civil service commission, in each city or municipality, shall make rules and regulations providing for examinations for positions in the paid police department in each city or municipality under this act, and for appointments to and promotions therein, * * *. All original appointments to any positions in police departments within the terms of this act shall be for a probationary period of six months."

Section 7 includes the following language: "All examinations for positions or promotions shall be practical in their character, and shall relate to such matters, and include such inquiries, as will fairly and fully test the comparative merit and fitness of the person or persons examined to discharge the duties of the employment sought by him or them. * * * All applicants for any position in the police department shall, * * * be required to submit to a physical examination before being admitted to the regular examinations held by the commission. * * * The commission shall post, in a public place at its office, the eligible list, containing the names and grades of those who have passed examinations for positions in police departments, under this article, and shall indicate thereon such appointments as may be made from said list." Section 8 deals with applications for positions of employment and is, in part, as follows: "The said commission may require, in connection with such application, such certificate of citizens, physicians or others, having knowledge of the applicant, as the good of the service may require. The said commission may refuse to examine an applicant, or, after examination, to certify as eligible, one * * *; or who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment; * * *." Section 9 deals with appointments from lists of eligible applicants and a portion thereof is as follows: "Every position or employment, unless filled by promotion, reinstatement, or reduction, shall be filled only in the following manner: * * *." Section 10 provides for filling vacancies "in any position in the police department" when there is no list of persons eligible.

Section 11 commences as follows: "Vacancies in positions in police departments shall be filled, so far as practicable, by promotion from among persons holding positions in the next lower grade in the department." Section 12 deals with physical examination and age limits as follows: "All applicants for any position in the police department shall undergo a physi-

cal examination which shall be conducted under the supervision of a commission composed of two doctors of medicine * * *. No application will be received if the person applying is less than twenty-one years of age or more than thirty-five years of age at the date of his application * * *." Section 13 contains the following language: "No member of any police department within the terms of this article shall be removed, discharged or reduced in rank or pay except for just cause, which shall not be religious or political, * * *." The language employed in the following portion of the same section may tend to indicate that the word "policemen" and the phrase "paid police department" are used synonymously: "If the number of paid policemen eligible for retirement * * * is sufficient to effect the reduction in numbers of said paid police department * * *."

A portion of Section 20 is as follows: "(a) No police officer shall serve as an election official, nor shall he engage in any political activity, * * *. Any violation by a police officer of the provisions of this section shall automatically vacate his appointment. (b) Any three citizens of this State, who are residents of the municipality in which such police officer may be employed, may file their written petition with the civil service commission setting out therein the grounds upon which the appointment of such police officer should be vacated for violation of subsection (a) of this section." Section 21 provides that any municipality of five thousand population or less may provide for an election to enable voters to vote "For Police Civil Service" or "Against Police Civil Service." Section 22 deals with the maximum work week, overtime compensation, and vacation time of "members of the police department subject to and under civil service."

The petitioner apparently places primary emphasis upon a portion of Section 19, which is as follows: "It is understood and intended by this act to furnish a complete and exclusive system for the appointment,

promotion, reduction, removal and reinstatement of all officers, policemen *or other employees of said police departments* in all cities and municipalities of five thousand population or more, wherein the members of the police department are paid." (Italics supplied.) The position of the petitioner is perhaps twofold: He relies on the phrase, "or other employees of said police departments"; and he contends that the three employees in question are employed to perform functions or duties normally and customarily performed by policemen.

Prior decisions of this Court afford little aid in a determination of the question herein presented for decision. In the case of *City of Huntington v. Smith,* 124 W. Va. 175, 19 S. E. 2d 581, W. Z. Smith, after having been duly certified and appointed as a city policeman pursuant to the civil service statutes herein involved, was assigned to a position as electrician for the police department with an increase in salary. This Court held that he could not be assigned to duty as a patrolman at a reduced salary except by compliance with the civil service statutes, particularly Section 13, which provides in part: "No member of any police department * * * shall be * * * reduced in rank or pay except for just cause." The case of *State ex rel. Crouse v. Holdren,* 128 W. Va. 365, 36 S. E. 2d 481, involved the right of W. D. Holdren to make arrests and otherwise to exercise the powers of a municipal police officer. He had been designated by merchants of the City of Beckley as a "special merchant's watchman", and had entered into a bond in the penal sum of thirty-five hundred dollars in order to be permitted to carry weapons customarily carried by police officers. The municipality undertook to clothe him, under such circumstances, with the power and authority of a city policeman. His salary was paid by merchants and no compensation was paid to him by the city. The Court held that the civil service statutes were applicable to such situation and stated: "* * * the fact that the act in question in terms does apply to paid policemen and

to them only, certainly does not confer the right to appoint privately paid officers upon the City Council of Beckley." The case of *State ex rel. W. Va. State Lodge, Fraternal Order of Police v. The City of Charleston,* 133 W. Va. 420, 56 S. E. 2d 763, involved an alleged appointment by municipal authorities of the City of Charleston of certain "special policemen," having all the powers of paid policemen of the municipality, including the power to arrest and authority to carry deadly weapons, though such persons were not paid by the city for their services. The Court reaffirmed the principles decided in the *Crouse* case and, in the body of the opinion, stated:

> "* * * We are of the opinion that in respect to the matter of special police or guards, or whatever term may be applied to them, the City of Charleston is without power to clothe such officers with the authority to make arrests, or to carry deadly weapons, or in any other way to use the power of the State as the same may be delegated to regularly appointed members of the police department of any town or city, coming within the civil service act. This being true, it may be that in a proper case mandamus might be invoked to compel the revocation of any such appointments. * * *"

These three prior decisions are authority for the proposition that city policemen within the purview of the statutes in question may be appointed or reduced in rank or pay only in accordance with the provisions of such statutes. But in each of such three cases, the person or persons appointed by the city were clearly clothed with the customary power, rights and authority of paid municipal policemen, including the power of arrest and the authority to carry deadly weapons.

The phrase "or other employees of said police departments" produces an ambiguity which requires a resort to familiar rules relating to construction of statutes. 50 Am. Jur., Statutes, Section 226, page 209.

> "In the absence of express language to the contrary, a statute must, or should, be read or construed as a whole, or in its entirety, and, with respect to the

construction of a statute, its division into sections is a purely artificial and unessential arrangement. * * * A statute should also be construed with respect to the subject matter to which it applies and the particular topic under which the language in question is found.

"All parts, provisions, or sections of a statute or section, must be read, considered, or construed together, and each must be considered with respect to, or in the light of all the other provisions or sections, and construed in connection, or harmony, with the whole. So, in determining the meaning of a particular word, phrase, or clause, as used in a statute, the entire statute is to be considered.

"In construing a statute, the intention or purpose of the legislature, or the meaning of the statute, is to be determined, not from any single part, portion, or section, or from isolated or particular portions, provisions, clauses, sentences, words or phrases, or from particular or specific expressions or terms, or from partial recitals, but from a general consideration or view of the act as a whole, or in its entirety."

82 C.J.S., Statutes, Section 345, pages 691-700. To the same effect see *State ex rel. Holbert v. Robinson,* 134 W. Va. 524, pt. 1 syl., 59 S. E. 2d 884; *Harbert v. County Court of Harrison County,* 129 W. Va. 54, 76-78, 39 S. E. 2d 177, 191-92; *Hall v. Baylous,* 109 W. Va. 1, pt. 1 syl., 153 S. E. 293; *Moss Iron Works v. Jackson County Court,* 89 W. Va. 367, pt. 6 syl., 109 S. E. 343.

Considering these statutory provisions in their entirety, we believe their language discloses a dominant legislative intent to make them applicable only to paid municipal policemen who are clothed with power of the state customarily exercised by policemen or other peace officers. Otherwise we would find it difficult to make a rational application of such words and phrases as the following: The phrase "promotions in all paid police departments" and the words "reinstated, promoted" found in Section 1; the word "members" as applied to police departments and as used in Section 2; the word "promotions" and the phrase "a physical examination before being admitted to the regular ex-

aminations'' as such word and such phrase are used in Section 7; the words ''promotion, reinstatement, or reduction'' as used in Section 9; and the phrase ''promotion from among persons holding positions in the next lower grade in the department'' as used in Section 11. It would be difficult to place any other reasonable construction upon the following language appearing in Section 12: ''No application will be received if the person applying is less than twenty-one years of age or more than thirty-five years of age at the date of his application.'' Such age category and the requirement of a physical examination to be made by or under the supervision of two medical doctors have significance when applied to the applicants for positions as paid policemen, but such requirements have far less reasonableness when applied to applicants for other positions of employment, such, for instance, as the position of traffic clerk. We believe it to be significant that by Section 20 only an employee who is a ''police officer'' is forbidden to serve as an election official or engage in political activity; and only the appointment of such ''police officer'' may be vacated because of the political activity proscribed by the section.

It should be observed that in Section 19 the words ''or other employees'' are preceded immediately by the words ''all officers, policemen.'' The words ''other employees'' are general in scope and meaning, but are preceded by the specific terms ''officers, policemen''. Such a situation is a proper one for application of a familiar rule of statutory construction which is stated in 82 C.J.S., Statutes, Section 332b, pages 658-660, as follows: ''Under the rule of construction known as 'ejusdem generis', where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense, they would have made no mention of the parti-

cular classes." See also 50 Am. Jur., Statutes, Section 249, page 244; 17 M. J., Statutes, Section 62, pages 325-26; *Cuppett v. Neilly,* 143 W. Va. 845, 859, 860, 105 S. E. 2d 548, 559. Under this rule of construction, general words do not amplify particular terms preceding them, but are themselves restricted and explained by the particular terms. In the case of *Greene Line Terminal Co. v. Martin,* 122 W. Va. 483, 491, 10 S. E. 2d 901, 906, the Court had under consideration a statute classifying property for purposes of taxation and was required to construe the meaning of the last three words of the following provision: "All money and all notes, bonds, bills and accounts receivable, stocks and any other intangible personal property, * * *." A taxpayer contended that a leasehold owned by him should be included in the classification specified by the language quoted above. In that connection the Court stated:

> "The proposition thus advanced by the taxpayer respecting the classification of its leasehold cannot be approved. The phrase 'other intangible personal property', appearing at the end of paragraph three under Class I, follows immediately after the specific mention of money, notes, bonds, bills, accounts receivable, and stocks. Under the familiar rule of *ejusdem generis* the general or inclusive phrase must be deemed to apply to things of the class or group specifically denominated and enumerated. This rule of statutory construction is applicable except where a context is such as to manifest a legislative intention to give to the general words a more extensive meaning and effect. *Gauley Coal Land Co. v. Koontz,* 77 W. Va. 583, 87 S. E. 930. Other than money, the things enumerated in the statutory paragraph under consideration are of the same family or group, namely, evidences of debt, and they are not inclusive of all the members of that family or group, as for example, due-bills, certificates of time-deposit, and recitals of indebtedness in deeds, mortgages or deeds of trust where no note for the debt has in fact been given. So, we are impressed that the general language used at the end of paragraph three under Class I was intended to apply to other evidences of indebtedness, and not to matters of a different nature. * * *."

In conformity with the rule of *ejusdem generis,* we believe that the general words "other employees" must be construed as limited in meaning by the preceding specific terms "officers, policemen." If the legislature had intended the words "other employees" to embrace all employees of the police department, the inclusion of the specific term "officers, policemen" would have been superfluous and wholly unnecessary. We believe it is evident from a consideration of the act in its entirety that the legislature intended its provisions to apply to members of the police department, paid policemen, but embracing policemen of all ranks and in all categories of duties to which such policemen properly may be assigned. In harmony with the case of *Huntington v. Smith,* 124 W. Va. 175, 19 S. E. 2d 581, a paid policeman duly appointed would come within the purview of the civil service statutes, even though assigned to duty as an electrician or to some other line of work to which a paid policeman might properly be assigned.

It cannot be said with reasonable justification that anyone of the three female employees herein involved is a policeman as such term is generally understood. They have not been clothed with the power of the state in a manner characteristic of policemen, such as the right to carry deadly weapons and the right to arrest.

For the reasons stated, the writ prayed for herein is denied.

*Writ denied.*