450 S.E.2d 661

**WEIRTON MEDICAL CENTER, INC.,**
Petitioner Below, Appellee,

v.

**WEST VIRGINIA BOARD OF
MEDICINE, Respondent
Below, Appellant.**

No. 22250.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 14, 1994.

Decided Oct. 28, 1994.

---

Carl N. Frankovitch, Mark A. Colantonio, Frankovitch & Anetakis, Weirton, for appellee.

Deborah Lewis Rodecker, Charleston, for appellant.

PER CURIAM:

This case's central question is when does *W.Va.Code* 30-3-14(b) [1986] require a hospital to report to the West Virginia Board of Medicine a hospital's disciplinary action against a physician.[1] The Board of Medicine maintains that a hospital's report is required within sixty (60) days of the completion of the hospital's formal disciplinary procedure and the Weirton Medical Center maintains that its report is not required until sixty (60) days after the completion of both the hospital's formal disciplinary procedure and any resulting legal action. Although we agree with the Board of Medicine's interpretation of *W.Va. Code* 30-3-14(b) [1986] that a hospital is required to report both after the formal disciplinary procedure and after any resulting legal action, because the *Code* section is susceptible to two different interpretations, we decline to impose a fine on the Center for, in this case, failing to report to the Board of Medicine.

I

The events underlying the central question began when Jorge A. Martinez, M.D., a licensed physician with staff privileges at the Center, had his staff privileges suspended on August 4, 1986 by the Center's Executive Committee. After a peer review hearing, the Executive Committee on September 9, 1986 decided that Dr. Martinez was an "impaired" physician and recommended a suspension of his privileges at the Center until the Center's administration was satisfied that his impairment was such that he could resume his practice and then, only under a monitor's supervision. The Executive Committee said that improvement of Dr. Martinez's impairment must be shown by an evaluation from one of the psychiatrists recommended by the Center. The Executive Committee also notified Dr. Martinez of his right to appeal.

In response to Dr. Martinez's request for an appeal period extension, the Executive Committee extended the appeal period until October 1, 1986. On September 30, 1986, after the Committee denied Dr. Martinez's request for another extension, Dr. Martinez accepted the Executive Committee's recommendation regarding his privileges.

On November 26, 1986, Dr. Martinez informed the Center that he had obtained two

1. Although *W.Va.Code* 30-3-14 was amended in 1989, the reporting requirement language was not changed.

independent psychiatric evaluations. Although the Center rejected those evaluations because they were not performed by their recommended psychiatrists, on December 9, 1986, the Center decided to permit Dr. Martinez to appeal, even though Dr. Martinez had waived his right to appeal. On December 11, 1986, Dr. Martinez appealed and the Hospital Board held a hearing on December 22, 1986. On December 30, 1986, the Hospital Board notified Dr. Martinez that the Hospital Board had modified the Executive Committee's recommendation and decided that Dr. Martinez should not practice medicine at the Center.

Because the recommendations of the Hospital Board and Executive Committee differed, the Center's Joint Conference Committee and Board of Trustees reviewed the matter and on January 12, 1987, the Joint Conference Committee decided to terminate Dr. Martinez's privileges.

On December 12, 1986, Dr. Martinez filed suit in the Circuit Court of Brooke County against the Center and others. On January 14, 1987, the circuit court granted Dr. Martinez's request to seal the court file and enjoined further administrative proceedings. The Center did not object to the confidentiality order and did not inform the circuit court of the Center's requirement to report the adverse physician action to the Board of Medicine.[2] In July 1990, the Board of Medicine learned of the sealed file when the Board of Medicine asked the Center about the status of Dr. Martinez's privileges. Following a hearing, the circuit court lifted the seal to allow the Board of Medicine access to the file.

Alleging that *W.Va.Code* 30-3-14(b) [1986] requires a hospital to report any action adverse to a physician within sixty (60) days after the completion of the hospital's formal disciplinary procedure, the Board of Medicine filed a complaint against the Center.

The matter was heard by a hearing examiner, who found that because the Center's formal disciplinary proceedings against Dr. Martinez were completed on October 1, 1986, the day Dr. Martinez waived his right to appeal the Executive Board's decision, the Center failed to report to the Board of Medicine the Center's adverse findings within sixty (60) days as required by the *Code*. The hearing examiner recommended a $7,500 fine[3] because of the "extraordinary length of time of three and one-half years delay in reporting a significant restriction of" Dr. Martinez's staff privileges. By order dated September 10, 1991, the Board of Medicine adopted the hearing examiner's recommended decision.

The Center appealed the Board of Medicine's decision to the circuit court. By order dated November 17, 1993[4], the circuit court found the Center did not violate the reporting requirement and dismissed the fine. The circuit court found that the Center's formal disciplinary proceedings against Dr. Martinez were not completed until January 12, 1987, the day the Center's Board of Trustees and Joint Conference Committee agreed to terminate Dr. Martinez's privileges. The circuit court also noted that on January 14, 1987, the circuit court sealed the record effectively enjoining the Center not to report to the Board of Medicine.

The Board of Medicine appealed the circuit court's decision to this Court alleging that the Center's formal proceedings against Dr. Martinez were completed on October 1, 1986 and that the Center failed to report within sixty (60) days the adverse physician action to the Board of Medicine as required by *W.Va.Code* 30-3-14(b) [1986].

## II

■ The central issue is when does *W.Va. Code* 30-3-14(b) [1986] require a hospital to report to the Board of Medicine an adverse

---

2. In 1989, the Board of Medicine, upon Dr. Martinez's request, reactivated Dr. Martinez's license to practice medicine and surgery in West Virginia without restriction or limitation.

3. *W.Va.Code* 30-3-14(b) [1986] provides that "if the board determines that a violation of this subsection (reporting requirement) has occurred,

the board shall assess a civil penalty of not less than one thousand dollars nor more than ten thousand dollars against such violator."

4. Because of the circuit court's delay in deciding this case, this Court issued a rule to show cause on September 29, 1993, which was dismissed as moot on December 2, 1993.

physician action. The Board of Medicine maintains that a hospital is required to report twice, once after the completion of the hospital formal disciplinary procedure and again after any resulting legal action. The Center argues that the only required report is after any resulting legal action.

*W.Va.Code* 30-3-14(b) [1986] states, in pertinent part:

> *After the completion of a hospital's formal disciplinary procedure and after any resulting legal action,* the chief executive officer of such hospital shall report in writing to the board within sixty days the name of any member of the medical staff or any other physician or podiatrist practicing in the hospital whose hospital privileges have been revoked, restricted, reduced or terminated for any cause, including resignation, together with all pertinent information relating to such action. [Emphasis added.]

The *Code's* reporting requirement uses separate prepositional phrases beginning with the preposition "after" that are connected by the conjunction "and." This sentence construction indicates that two reports are required. Given the language of the *Code*, we find that the legislature intended to require two reports to the Board of Medicine concerning a hospital's adverse physician action. The double reporting requirement is consistent with the legislative findings for the West Virginia Medical Practice Act that are stated in *W.Va.Code* 30-3-1 [1980], which provides, in pertinent part:

> As a matter of public policy, it is necessary to protect the public interest through enactment of this article and to regulate the granting of such privileges and their use.

*See* Syl. pt. 5, in part, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953) (recognizing the statute's "overall purpose [is] the preservation of the public health").

In *Vest,* we discussed and applied the rules of statutory interpretation to the West Virginia Medical Practice Act, *W.Va.Code* 30-3-1 [1980] *et seq.* We noted the following two "cardinal" rules of construction:

> The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature.

Syl. pt. 8, *Vest, id.*

> It is a cardinal rule of statutory construction that a statute should be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof, but such rule of construction should not be invoked so as to contravene the true legislative intention.

Syl. pt. 9, *Vest, id.*

The Center maintains that the only required report is after completion of "any resulting legal action." *W.Va.Code* 30-3-14(b) [1986]. For support the Center notes that the 1986 amendment to this *Code* section deleted the word "also" before the second prepositional phrase, which according to the Center, indicates a change to only one required report. *W.Va.Code* 30-3-14(b) [1980] stated:

> The chief executive officer of every hospital shall *within sixty days after the completion of the hospital's formal disciplinary procedure and also after any resulting legal action, report in writing to the board* the name of any member of the medical staff or any other physician or podiatrist practicing in the hospital whose hospital privileges have been revoked, restricted, reduced or terminated for any cause, including resignation, together with all pertinent information relating to such action.

Although the word "also" was deleted when *W.Va.Code* 30-3-14 was rewritten in 1986, the language of the statute continued to require two reports as shown by the use of separate prepositional phrases. In this context, the word "also" was a supernumerary. The legislative rules of the Board of Medicine, effective April 28, 1986, continued to use the word "also" and indicated that two reports are required.

> The chief executive officer of every hospital shall within sixty (60) days *after the completion of the hospital's formal disciplinary procedure, and also after any resulting legal action,* report in writing to the Board the name of any member of the medical staff or any other physician or podiatrist practicing in the hospital whose

hospital privileges have been revoked, restricted, reduced or terminated for any cause, including resignation, together with all pertinent information relating to such action. The chief executive officer shall also report any other formal disciplinary action taken against any physician or podiatrist by the hospital upon the recommendation of its medical staff relating to professional ethics, medical incompetence, medical malpractice, moral turpitude or drug or alcohol abuse. This subsection does not apply to any temporary suspension for failure to maintain records on a timely basis or for failure to attend staff or section meetings. [Emphasis added.]

11 C.S.R. 1–22.2(e) [1986].

Since 1986, the Board of Medicine's legislative rules have been amended several times and these amended rules indicate that three reports are now required: first, after the completion of a hospital's formal disciplinary procedures; second, after the commencement of a legal action; and finally, after the conclusion of the legal action. The hospital's reporting requirement is outlined in 11 C.S.R. 1A–14.2(e) [1991], which stated, in pertinent part:

The chief executive officer of every hospital shall *within sixty (60) days after the completion of the hospital's formal disciplinary procedure, and also after the commencement of and again after the conclusion of any resulting legal action,* report in writing to the Board the name of any member of the medical staff or any other physician or podiatrist practicing in the hospital whose hospital privileges have been revoked, restricted, reduced, or terminated for any cause, including resignation, together with all pertinent information relating to such action. [Emphasis added.]

The hospital's 1991 reporting requirement remained the same in the 1992, 1993 and 1994 legislative rules for the Board of Medicine.

We, therefore, hold that both the *Code* and the legislative rules require a hospital to report at least twice to the Board of Medicine concerning an adverse physician action. The first report shall be within sixty (60) days "after the completion of a hospital's formal disciplinary procedure" and the second report shall be within sixty (60) days "after any resulting legal action." *W.Va. Code* 30–3–14(b) [1986].

### III

◼ The Board of Medicine maintains that because the Center completed its formal disciplinary procedure on October 1, 1986, when Dr. Martinez waived his right to appeal, the Center was required to report the adverse physician action to the Board of Medicine by December 1, 1986. The Center maintains that its formal disciplinary procedure was not completed until January 12, 1987 when the Center's Joint Executive Committee, in agreement with the Board of Trustees, terminated Dr. Martinez's privileges at the Center. The Center notes that the circuit court's confidentiality order of January 14, 1987, barred it from reporting to the Board of Medicine.

Both parties cite the Center's bylaws to support their respective positions. The Board of Medicine cites the following bylaws: Art. III–B § 6(b), § 2(b), and § 2(c), which state respectively:

If such appellate review is not requested within three (3) days, the affected practitioner shall be deemed to have waived his right to the same, and to have accepted such adverse recommendation or decision, and the same shall become effective immediately as provided in Section 2 of this Article III–B.

Art. III–B § 6(b).

The failure of a practitioner to request a hearing to which he is entitled by these bylaws within two (2) weeks shall be deemed a waiver of his right to such hearing and to any appellate review to which he might otherwise have been entitled on the matter. The failure of a practitioner to request an appellate review to which he is entitled by these bylaws within the time and in the manner herein provided shall be deemed a waiver of his rights to such appellate review on the matter.

Art. III–B § 2(b).

When the waived hearing or appellate review relates to an adverse recommenda-

tion of the Executive Committee of the Medical and Dental Staff or of a hearing committee appointed by the Governing Body, the same shall thereupon become and remain effective against the practitioner pending the Governing Body's decision on the matter. When the waived hearing or appellate review relates to an adverse decision by the Governing Body the same shall thereupon become and remain effective against the practitioner in the same manner as a final decision of the governing Body provided for in Section 7 of this Article III–B. In either of such events, the Executive Director shall promptly notify the affected practitioner of his status by certified mail, return receipt requested.

Art. III–B § 2(c). The Board of Medicine argues that when considered together the Center's bylaws dictate the conclusion that Dr. Martinez's October 1, 1986 appeal waiver ended the Center's formal disciplinary procedure.

The Center cites Art. III–B § 2(c) and Art. III–B §§ 7(a) and (b), to show that the final decision in this disciplinary matter was made by the Governing Body, the Joint Executive Committee, on January 12, 1987. Art. III–B §§ 7(a) and (b) of the Center's bylaws state:

a. Within ten (10) days after conclusion of the appellate review, the Governing Body shall make its final decision in the matter and shall send notice thereof to the Executive Committee and, through the Executive Director, to the affected practitioner, by certified mail, return receipt requested. If this decision is in accordance with the Executive Committee's last recommendation in the matter, it shall be immediately effective and final, and shall not be subject to further hearing or appellate review. If this decision is contrary to the Executive Committee's last such recommendation, the Governing Body shall refer the matter to the Joint Conference Committee for further review and recommendation within five (5) days, and shall include in such notice of its decision a statement that a final decision will not be made until the Joint Conference Committee's recommendation has been received. At its next meeting after receipt of the Joint Conference Committee's recommendation, the Governing Body shall make its final decision with like effect and notice as first above provided in this Section 7.

b. Not withstanding [sic] any other provision of these bylaws, no practitioner shall be entitled as a right to more than one hearing and one appellate review on any matter which shall have been the subject of action by the Executive Committee of the Medical and Dental Staff or by the Governing Body, or by a duly authorized committee of the Governing Body, or by both.

Although the bylaws indicate that the final decision in a physician disciplinary matter is made by the Governing Body, the Joint Executive Committee, the Center's actions in this case mitigate against such a finding. First, after Dr. Martinez waived his appeal on October 1, 1986, the Center disregarded the bylaws' hierarchical disciplinary procedures until Dr. Martinez sought to have his privileges reinstated on November 26, 1986. Only then did the Center activate the additional disciplinary procedures that resulted in a Joint Executive Committee decision on January 12, 1987, a mere 6 weeks after Dr. Martinez's request for reinstatement. The Center, by not following the bylaws' disciplinary procedures, accepted as final the non-appealed October 1, 1986 decision. The Center's December 9, 1986 letter to Dr. Martinez recognized the finality of an appeal waiver by saying:

Your failure to request appellate review by the Governing Body will be deemed a *permanent* waiver of any staff privileges you previously had or which you currently seek to have reinstated.[5]

Second, in the circuit court case between the Center and Dr. Martinez, the Center maintained that the October 1, 1986 decision was final. In its memorandum in support of summary judgement filed in February 1989, the Center said:

---

5. The Center's December 9, 1986 letter allowed Dr. Martinez to appeal the October 1, 1986 decision "in an effort to afford you all protections and safeguards possible...."

If the physician fails to timely request [sic] an appeal, he waives his right to any appeal and *the decision of the Executive Committee becomes final and effective immediately* (emphasis added) [Article III–B, Section 6(b) ] . . . .

Later, the Center concluded:

Dr. Martinez was provided each and every appellate procedure step set forth in the Bylaws. He failed to request an appeal of the Executive Committee's recommendation by October 1, 1986. *As a result, the Committee's September 9th recommendation became the Hospital's final decision. . . .* (Emphasis added).

Because the Center, until this Board of Medicine action, considered a physician's appeal waiver as a final decision, we find that the Center's formal disciplinary procedures were completed on October 1, 1986. Thus the Center had sixty (60) days, in this case until December 1, 1986, to report the adverse physician action to the Board of Medicine.[6] Based on the Center's acts, we find that the Center's formal disciplinary procedures were completed on October 1, 1986 and the Center should have reported its adverse physician action to the Board of Medicine within sixty (60) days as required by *W.Va.Code* 30–3–14(b) [1986].

## IV

 Although we find that the Center did not report its adverse physician action as required by *W.Va.Code* 30–3–14(b) [1986], we decline to reverse the circuit court's refusal to impose a $7,500 fine on the Center. In seeking the fine the Board of Medicine maintained that *W.Va.Code* 30–3–14(b) [1986]'s reporting requirement was clear. However, in light of the 1986 amendments, we find that this *Code* section was susceptible to different interpretations and that the Center acted in good faith. The Board of Medicine argues that the Center's failure to report timely led to a three and a half year delay; however, the length of the delay was the result of the sealed circuit court record. Although the Center should have notified the circuit court of the report required by *W.Va.Code* 30–3–

14(b) [1986], we do not find the Center's six week delay and failure to notify the circuit court merit the substantial fine sought by the Board of Medicine.

 Based on the above stated reasons, even though the circuit court's reasoning was flawed, we find that the circuit court correctly reversed the Board of Medicine. We have long held harmless, a technical error that does not affect the judgment, because the correction of such error would not tend to produce a different result. In Syl. pt. 5, *Miller v. Bd. of Educ. of County of Boone*, 190 W.Va. 153, 437 S.E.2d 591 (1993), we stated:

" 'An error which is not prejudicial to the complaining party is harmless and does not require reversal of the final judgment.' Syllabus Point 4, *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980)." Syl. pt. 2, *Robertson v. Truby*, 170 W.Va. 62, 289 S.E.2d 736 (1982).

Accordingly, the judgment of the Circuit Court of Brooke County is affirmed.

Affirmed.

---

**6.** The Center's decision to allowed Dr. Martinez to appeal did not occur until December 9, 1986, nine days after the Center was required to report its actions to the Board of Medicine.