535 S.E.2d 220

**Mousa Ibraham DABABNAH, Petitioner Below, Appellant,**

v.

**WEST VIRGINIA BOARD OF MEDICINE, Respondent Below, Appellee.**

No. 27751.

Supreme Court of Appeals of West Virginia.

Submitted June 13, 2000.

Decided July 12, 2000.

John C. Yoder, Esquire, Harpers Ferry, West Virginia, Attorney for Appellant.

Deborah Lewis Rodecker, Esquire, Charleston, West Virginia, Attorney for Appellee.

SCOTT, Justice:

Through this appeal, Appellant Mousa I. Dababnah seeks a reversal of the Appellee West Virginia Board of Medicine's ("Board's") decision to deny his application seeking renewal of his medical license. The Circuit Court of Kanawha County affirmed the Board's actions based on its interpretation of the statutory provisions of West Virginia Code § 48A–5A–5(c) (1999), as authorizing licensing authorities, independent of any circuit court involvement, to deny any license request where the applicant has child support arrearages in an amount equivalent to six months of child support. Upon our review of the record in this matter in conjunction with the applicable statutes, we reverse,

after determining that the statutory scheme of article 48A, chapter 5A, requires the involvement of a circuit court in a license denial which arises from the nonpayment of child support.

## I. Factual and Procedural Background

Dr. Dababnah was initially licensed to practice medicine in this state on January 13, 1976. A rather "acrimonious divorce and child support proceedings ... began in the Circuit Court of Raleigh County ... on December 22, 1993," which, due to Dr. Dababnah's non-payment of ordered child support,[1] resulted in substantial child support arrearages. *Dababnah v. West Virginia Board of Medicine*, 47 F.Supp.2d 734, 736 (S.D.W.Va. 1999). In an attempt to comply with the biennial medical license renewal mandated by law, Dr. Dababnah submitted his partially completed application on June 16, 1998. By letter dated June 24, 1998, the Board returned the incomplete application, and requested specific responses to three items. One of these items was a question that inquired, as required by law, that a license applicant state whether he has any child support arrearages. *See* W.Va.Code § 48A–5A–5(c). When Dr. Dababnah resubmitted his renewal application,[2] he did so without completing the questions concerning child support obligations and arrearages.

Dr. Dababnah received a letter from the Board on July 2, 1998, informing him that his application for renewal of his medical license had been denied.[3] The Board's letter stated, in explanation of the denial, that Dr. Dababnah had failed to answer certain questions required to complete the application and that his child support arrearage was equal to or exceeded the six-month amount specified in West Virginia Code § 48A–5A–5(c).[4] Pursuant to Dr. Dababnah's request, an administrative hearing was held on August 21, 1998, in connection with the Board's actions.[5] The administrative hearing examiner issued a recommended decision on October 29, 1998, and the Board, by order dated, November 13, 1998, adopted the hearing examiner's decision[6] confirming the "denial, expiration and lapse of Dr. ... Dababnah's medical license effective July 1, 1998." Upon its review of the administrative ruling and evidence submitted, the circuit court similarly upheld the Board's actions. Dr. Dababnah seeks a reversal of the lower court's ruling that the Board's decision to deny his medical license based on child support arrearages was mandated by the provisions of subsection 5(c).

## II. Standard of Review

Our review of this matter is governed by the standard articulated in syllabus point one of *West Virginia Health Care Cost Review Authority v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996):

1. Pursuant to an order of divorce entered in 1995, Dr. Dababnah was required to pay $3,771 per month in cumulative child support payments for his three children. Although he filed a motion seeking to reduce those monthly child support payments in October 1997, the record submitted in this case does not indicate whether any reduction was ordered.

2. The resubmitted application was received by the Board on the very last date permitted for filing such applications for this particular biennial period—June 30, 1998.

3. This Court learned for the first time through representations contained in the Board's brief filed on June 12, 2000, after wrongly assuming there was a need for expedited consideration of this matter, that Dr. Dababnah's medical license was reinstated pursuant to a preliminary injunction order entered on February 19, 1999, in connection with a separate lawsuit Dr. Dababnah filed in the United States District Court for the Southern District of West Virginia. While

the Board further represents in its brief that the federal district court dismissed all of Dr. Dababnah's claims by memorandum opinion and order on March 17, 2000, we assume that the dismissal did not result in a lifting of the injunctive relief, which required reinstatement of Dr. Dababnah's medical license, as neither party has so indicated to this Court.

4. The amount of the child support arrearage was based upon the submission of an affidavit, obtained from the North Carolina Child Support Enforcement Agency. According to the averments in this affidavit, Dr. Dababnah was $67,886.82 in arrears as of June 26, 1998.

5. *See* 11 W.Va.C.S.R. § 11–3–10.

6. The Board modified the hearing examiner's recommended decision by rewriting conclusion of law, number 12, to include specific statutory references as controlling with regard to licensure proceedings. Otherwise, the Board adopted the recommended decision *in toto*.

" 'Upon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." ' Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983)." Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987).

While Dr. Dababnah contends that the lower court incorrectly applied this standard, our review of the lower court's order convinces us otherwise. Rather than a misapplication by the circuit court of the pertinent principles of review,[7] Dr. Dababnah appears to have misapprehended the lower court's recitation of its duty to adopt the Board's factual findings absent a determination that such factual findings were clearly wrong. We find no error with regard to the standard of review applied by the circuit court. Our review in this case is de novo based upon the presentation of pure legal questions involving issues of statutory interpretation. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

**III. Discussion**

At the crux of this appeal is whether the Board, acting on its own without any involvement of a circuit court, has the authority to take action relative to a license renewal application pursuant to the provisions of West Virginia Code § 48A–5A–5(c). That statutory subsection reads as follows:

Each licensing authority shall require license applicants to certify on the license application form, under penalty of false swearing, that the applicant does not have a child support obligation, the applicant does have such an obligation but any arrearage amount does not equal or exceed the amount of child support payable for six months, or the applicant is not the subject of a child-support related subpoena or warrant. *A license shall not be granted to any person who applies for a license if there is an arrearage equal to or exceeding the amount of child support payable for six months or if it is determined that the applicant has failed to comply with a warrant or subpoena in a paternity or child support proceeding.* The application form shall state that making a false statement may subject the license holder to disciplinary action including, but not limited to, immediate revocation or suspension of the license.

*Id.* (emphasis supplied)

The Board takes the position that it is reposed with the necessary authority to unilaterally refuse to renew an applicant's license application based upon the underscored language in subsection 5(c), which mandates that licenses cannot be granted to individuals having child support arrearages in an amount equivalent to six months of aggregated child support.[8] As further support for its position, the Board relies upon the fact that the West Virginia Bureau of Child Support Enforcement ("Child Support Enforcement"), interprets subsection 5(c) as empowering licensing authorities, such as the Board, with the authority to deny applica-

---

**7.** Dr. Dababnah maintains that the lower court approached its review of the Board's rulings as requiring it to adopt the administrative findings of fact, irrespective of any error in such findings.

**8.** In this case, the child support arrearage was three times the amount required by statute to affect licensing decisions, as the arrearages were $67,686.82 and the six-month equivalency amount would have been $22,626 ($3,771 times 6). *See supra* note 1.

tions without consideration of the numerous protections set forth in the remaining sections of chapter 48A, article 5A, and without a need to first initiate proceedings before a circuit court relative to application denials predicated on child support arrearages.

As an initial matter, we note that the 1997 enactment of article 48A, chapter 5A, was prompted by federal legislation entitled the "Personal Responsibility and Work Opportunity Reconciliation Act of 1996" ("PRWORA"), otherwise known as the Welfare Reform Act, which requires that any state desirous of receiving federal funds in the form of block grants must have in place:

> Procedures under which the State has (and uses in appropriate cases) authority to withhold or suspend, or to restrict the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support or failing, after appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings.

42 U.S.C.A. § 666(a)(16) (Supp.1999).[9] The Tenth Circuit Court of Appeals recently rejected the arguments advanced by the State of Kansas concerning the unconstitutionality of the PRWORA.[10] Kansas maintained that the PRWORA-imposed requirements, which include the establishment of a state case registry containing all child support orders and imposition of various regulatory frameworks designed to ensure increased efficiency in child support enforcement, were "too onerous and expensive, necessitate[d] too much manpower, and encroach[ed] upon its ability to determine its own laws." *State of Kansas v. United States,* 214 F.3d 1196, 1198 (10th Cir.2000). In rejecting these arguments, the Tenth Circuit recognized that "Congress' spending power enables it 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.' " *Id.* (quoting *Fullilove v. Klutznick,* 448 U.S. 448, 474, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980)).[11]

The constitutional concerns raised by Dr. Dababnah arise from the Board's interpretation of subsection 5(c), and not from the constitutionality of article 48A, chapter 5A, as a whole. When applied in the fashion advocated by the Board, Dr. Dababnah argues that subsection 5(c) violates his rights to due process by denying him meaningful notice and a pre-deprivation hearing relative to his license denial.[12] In addition, he suggests that the Board's position is in contravention of the scheme intrinsic to chapter 5A, which entails a host of procedural protections and requires consideration of alternate, lessrestrictive sanctions before permitting professional licensure revocation.[13]

When read in *pari materia,* the provisions of West Virginia Code 48A–5A–1 to –7 (1999) envision a procedural mechanism for licensure actions arising from child support arrearages that begins with the issuance of a notice by the child support enforcement

---

**9.** The PRWORA also requires that child support arrearages must result in revocation of passports, institution of property liens, and notification to consumer credit reporting agencies. *See* 42 U.S.C. § 652(k), 666(a)(1)–(4), (6)–(7) (1997).

**10.** Kansas cited the Spending Clause of Article 1, section 8, and the Tenth Amendment as the federal constitutional provisions violated by the provisions of the PRWORA. *See Kansas v. United States,* 214 F.3d 1196, 1198–99 (10th Cir.2000).

**11.** The Court noted that Kansas had raised a due process challenge regarding the automatic enforcement mechanisms connected to child support arrearages, but stated that this argument appears not "to have merit." *Kansas,* 214 F.3d at 1200. The Tenth Circuit acknowledged, however, that this argument, along with a privacy concern, had not been developed in the brief. *Id.*

**12.** Because we reject the Board's interpretation of subsection 5(c), we need not address at length the due process issues raised by Dr. Dababnah. While due process issues were clearly raised by virtue of how the Board proceeded in this case, no future due process violations will result when the administrative agencies follow the entirety of the statutory procedures set forth in chapter 5A, as clarified by this opinion.

**13.** Although the license at issue in this case is a medical license, the provisions of article 48A, chapter 5A, apply equally to all professional, union, and recreational licenses issued in this state. *See* W.Va.Code § 48A–5A–2 (defining licenses subject to provisions of chapter 5A).

division [14] and which is followed by an order issued by a circuit court finding the obligor/license applicant to be in arrearage for the equivalency of six months of child support payments. Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."); Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly."). This is clear from the language of section four, which begins "[t]he **court shall order a licensing authority to deny, refuse to renew, suspend or restrict a license if it finds that....**" W.Va.Code § 48A–5A–4(a) (emphasis supplied). This section, which is entitled "Hearing on denial, nonrenewal, suspension or restriction of license" irrefutably requires a hearing before a circuit court **prior** to any licensure action.

That a pre-deprivation hearing plays a critical role with regard to the mechanism established by the Legislature for licensure denial, revocation, or suspension is easily seen. Only after five specified factors have been considered, can a circuit court enter an order that affects an individual's licensure. Section four requires that the lower court, not some administrative agency, must determine that:

(1) All appropriate enforcement methods have been exhausted or are not available;

(2) The person is the holder of a license or has an application pending for a license;

(3) The requisite amount of child support or medical support arrearage exists or health insurance for the child has not been provided as ordered, or the person has failed to comply with a subpoena or warrant relating to a paternity or child support proceeding;

(4) No motion to modify the child support order, filed prior to the date that the notice was sent by the child support enforcement division, is pending before the court; and

(5) There is no equitable reason, such as involuntary unemployment, disability, or compliance with a court-ordered plan for the periodic payment of the child support arrearage amount, for the person's noncompliance with the child support order.

W.Va.Code § 48A–5A–4(a)(1)–(5).

Even after a circuit court has been offered evidence relative to the above-delineated five factors, it must **first** consider taking action that does not affect an individual's professional license. Section four (b) states that "[i]f the court is satisfied that the conditions described in subsection (a) of this section exist, it shall first consider suspending or restricting a driver's license prior to professional license." [15] W.Va.Code § 48A–5A–4(b). In addition, the circuit court is authorized by statute to consider certain mitigating circumstances in determining whether to take licensure action.[16] Upon analysis, we

**14.** *See* W.Va.Code § 48A–5A–3 (stating that "child support enforcement division shall send a written notice of an action against a license to a person who: (1) Owes overdue child support ...; (2) Has failed ... to pay medical support; and (3) Has failed, after appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings").

**15.** This same section does provide, however, that "[i]f the person fails to appear at the hearing after being properly served with notice, the court shall order the suspension of all licenses held by the person." W.Va.Code § 48A–5A–4(b).

**16.** West Virginia Code § 48A–5A–4(c) provides that:

If the court finds that a license suspension will result in a significant hardship to the person, to the person's legal dependents under eighteen years of age living in the person's household, to the person's employees, or to persons, businesses or entities to whom the person provides goods or services, the court may allow the person to pay a percentage of the past-due child support amount as an initial payment, and establish a payment schedule to satisfy the remainder of the arrearage within one year, and require that the person comply

conclude that the provisions of section four clearly comprehend and require a ruling from a circuit court before any action, induced by child support arrearages, is taken relative to an individual's licensure. *See id.* § 48A–5A–4.

When viewed as part of a congruent legislative scheme rather than a provisional grant of unfettered authority, the statutory interpretation advocated by the Board does not withstand scrutiny. Focusing solely on the language of one particular subsection—5(c)—the Board maintains that it has legislatively-sanctioned authority to take licensure action separate from the procedures delineated in section four and independent of any circuit court oversight. The indefensibility of this position is easily demonstrated. The only language upon which the Board relies [17] is an internal sentence found in subsection 5(c) which states that: "A license shall not be granted to any person who applies for a license if there is an arrearage equal to or exceeding the amount of child support payable for six months...." W.Va.Code § 48A–5A–5(c). Rather than authorizing autonomous action, section 5(c) merely states, in mandatory terms, that licensing authorities are not permitted to grant licenses when the statutorily-specified amount of arrearages exists. This singular proviso does not, as the Board maintains, abrogate all the attendant procedural protections established by the Legislature for initially establishing the arrearage itself, nor does it eliminate the required judicial determination of whether action short of professional licensure denial, suspension, non-renewal, or restrictions should be taken. *See id.* § 48A–5A–4. Even

the title of section five demonstrates the fallibility of the Board's position. Critically, section five is entitled: "Enforcement of order by licensing authority" and begins, by stating that "[t]he child support enforcement division shall provide the licensing authority with a copy of the order requiring the denial, nonrenewal, suspension or restriction of a license." *Id.* § 48A–5A–5(a). The language of section 5, when all of its subsections are considered together, makes clear that the arrearage referred to in subsection (c) must have been found to exist in an appropriate judicial proceeding and an order must have been issued reflecting that arrearage before any licensure action can be effected by an administrative licensing body.

We find no authority for the position initially taken by Child Support Enforcement, and then adopted by the Board, that subsection 5(c) applies to licensing authorities regardless of whether Child Support Enforcement is pursuing the license applicant for child support arrearages. *See* W.Va.Code § 48A–5A–3 (delineating notice procedures Child Support Enforcement must utilize when advising individuals of arrearages). Because the notice procedures specified in section three are stated in mandatory terms,[18] and the responsibility for complying with such procedures is placed upon Child Support Enforcement, it stands to reason that the involvement of Child Support Enforcement through notice provision is intended in each and every instance of licensure action initiated under chapter 5A. Furthermore, it similarly defies logic to suggest, as does the Board, that because subsection 5(c)

with any current child support obligation. If the person agrees to this arrangement, no suspension or restriction of any licenses shall be ordered. Compliance with the payment agreement shall be monitored by the child support enforcement division.

Immediately following this subsection is a provision that permits an individual who has agreed to a payment plan pursuant to subsection 4(c) to file a motion for good cause seeking an extension of the court-approved payment plan. *See* W.Va. Code § 48A–5A–4(d).

**17.** We must note that the Board's position is in violation of the most basic of all rules of statutory construction: A statute must be examined in its entirety and a court should not limit its review to

" 'any single part, provision, section, sentence, phrase or word.' " Syl. Pt. 3, in part, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990) (quoting Syl. Pt. 1, in part, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962)).

**18.** West Virginia Code § 48A–5A–3(a) begins by stating: "The child support enforcement division shall send a written notice of an action against a license to a person who...." The first notice that Dr. Dababnah had with regard to the licensure action taken here was when he received, after the fact, notice from the Board informing him that his renewal application had been denied effective July 1, 1998.

gives no discretionary authority to licensing boards, such authorities must deny a license application if an applicant is six months or more behind in his/her child support payments notwithstanding the existence of mitigating, extenuating factors. In advocating that the mitigating factors enumerated in section four can be considered only when a circuit court hearing fortuitously results,[19] the Board suggests an inherently unworkable and prejudicial approach to enforcing the legislative intent that permeates chapter 5A. *See* W.Va.Code § 48A–5A–4. Neither of these arguments is consistent with the comprehensive scheme outlined in that chapter.

■ In both its brief and during oral argument, the Board forcefully argued that its interpretation of subsection 5(c) was necessarily correct, since that same position has been adopted by Child Support Enforcement. *See* Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981) (holding that "[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous"). The policy manual issued by Child Support Enforcement states that:

> The law also requires each Licensing Authority to deny a NCP's [noncustodial parent] application or reapplication for license without order from the court if the NCP owes arrears in an amount equal to or exceeding the amount of child support payable for 6 months.... Consequently, a license shall not be granted to any NCP who applies for a license or license renewal if there is a child support arrearage equal to or exceeding the amount of child support payable for six months....

Throughout its multiple exhortations to this Court regarding the established practice of giving deference to administrative interpreta-

tions of statutes, the Board failed to acknowledge, even once, that these deferential principles are not applied without limitation. As we articulated in *Boone Memorial Hospital*, "deferential standards have no application if an agency's decision is based upon a mistaken impression of the legal principles involved." 196 W.Va. at 335, 472 S.E.2d at 420. Expounding further on the extent of administrative deference, we stated that "deference only should be given to an agency's construction of a statute or legislative rule if the legislative intent is not clear." *Id.* (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). "[A]dministrative orders and rules that are contrary to legislative intent," as we explained in *Boone Memorial Hospital*, must be rejected. 196 W.Va. at 335, 472 S.E.2d at 420. Because our reading of chapter 5A convinces us that the Legislature has expressed its intent in unmistakably clear fashion, we are neither compelled, nor permitted, to blindly follow, as did the Board, the interpretation adopted by Child Support Enforcement.

■ An exacting examination of chapter 5A convinces us that the role envisioned by the Legislature for licensing authorities was quite minor and limited to implementation of orders previously entered by a circuit court. When the provisions of chapter 5A are viewed in their entirety, as they must be, the only logical conclusion to be reached is that the Legislature clearly did not authorize licensing authorities to effect the autonomous licensure denial taken by the Board in this case. Accordingly, we hold that a licensing authority is not authorized by the language of West Virginia Code § 48A–5A–5(c) to unilaterally deny an application seeking renewal[20] based upon the existence of arrearages

---

**19.** Through strict adherence to the statutory provisions specified in chapter 5A.

**20.** One argument, which we need not address at length given the renewal status of the license application at issue, is Dr. Dababnah's suggestion that the language of 5(c), at best, permits a licensing body to deny outright those original license applications where child support arrearages meet the requisite amount. W.Va.Code § 48A–5A–5(c). While this distinction has a cer-

tain intellectual appeal given the fact that an individual who (assuming a professional license is the license being sought) has not yet been issued his initial professional license would not be entitled (in theory) to consideration of a less-restrictive licensure action, such as revocation of an operator's license (because section four (b) presumes an existing professional license), we, nonetheless, find the circuit court's omission from such licensure action to be problematic. Moreover, this position is defeated by the fact

**630**

equivalent to six months of child support payments. Before any licensure action can be effectuated properly by a licensing authority, a circuit court must hold a hearing and consider all of the factors identified in West Virginia Code § 48A–5A–4. Only after the circuit court has issued its order authorizing action relative to an individual's licensure, may the licensing authority enforce such order by implementing the denial, nonrenewal, suspension, or restrictions directed by the circuit court's order.

Our decision in this case is buttressed by the fact that under the statutory schema of Article 48A, Chapter 5A, the licensing authority is a mere functionary whose duties are purely ministerial. The Board is mandated by the language of West Virginia Code § 48A–5A–5(a), which requires it "[u]pon receipt of an order requiring the suspension or restriction of a license for nonpayment of child support," to "immediately notify the applicant or licensee of the effective date of the denial, nonrenewal, . . . which shall be twenty days after the date of the notice." W.Va.Code § 48A–5A–5(a). The limited role of the licensing authority is further evidenced by the statutory language which provides that "[l]icensing authorities shall not have jurisdiction to modify, remand, reverse, vacate or stay a court order to deny, not renew, suspend or restrict a license for nonpayment of child support." *Id.* Only upon the filing by Child Support Enforcement of "either a court order restoring the license or a child support enforcement division certification at-

testing to compliance with court orders for the payment of current child support and arrearage" can the limitations imposed on licensure be rescinded. *Id.* § 48A–5A–5(b). That the Legislature views a licensing authority as having an implementarian, nonadjudicatory function only is further gleaned from the fact that chapter 5A expressly provides that a licensing body, such as the Board, cannot be held liable for its actions in following a court order concerning a licensing directive. W.Va.Code § 48A–5A–5(a). Contrary to the position advocated by the Board, the provisions of subsection 5(c) do not empower licensing authorities to deny licensure in the autonomous fashion employed in this case.

Based upon the foregoing, we reverse the decision of the Circuit Court of Kanawha County.

Reversed.

Chief Justice MAYNARD, and Justice DAVIS, deeming themselves disqualified, did not participate in the decision in this case.

Judge JOHN R. FRAZIER and Judge ALAN D. MOATS sitting by temporary assignment.

that section 5(a), which addresses the enforcement of court orders by licensing authorities, expressly includes orders that "deny" licensure. *Id.* § 48A–5A–5(a). It stands to reason that, if licensing authorities, such as the Board, were permitted to act independently of a circuit court with regard to initial applications, there would be no reason for the inclusion of the term "denial" in subsection 5(a). *See Weirton Med. Ctr.,*

*Inc. v. West Virginia Bd. of Med.,* 192 W.Va. 72, 75, 450 S.E.2d 661, 664 (1994) (discussing cardinal rule of statutory construction that statutes are to " 'be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof' ") (quoting Syl. Pt. 8, in part, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953)).